(No. 42414.—
*In re* ROBERT E. GARTLAND, Attorney, Respondent.

*Opinion filed December 4, 1970.*

SCHAEFER, J., took no part.

JOHN CADWALADER MENK, of Chicago, *amicus curiae.*

THOMAS P. SULLIVAN and DAVID C. ROSTON, both of Chicago, (JENNER & BLOCK, of counsel,) for respondent.

Mr. JUSTICE WARD delivered the opinion of the court:

The Board of Managers of The Chicago Bar Association has recommended that Robert E. Gartland, the respondent, who was admitted to the practice of law in Illinois in 1939, be suspended for one year. The members of the Board and the members of the Committee on Grievances of the association serve as commissioners of this court under Rule 751 in matters relating to the discipline of attorneys.

A Federal grand jury for the Northern District of Illinois returned an eight-count indictment against Robert W. Pfeiffer, Anthony J. Montalbano, Benjamin McCully, and the respondent, which charged violations of section 657, section 1006 and section 2 of Title 18 of the United States Code. It was alleged in six counts that Pfeiffer and Montalbano with intent to defraud the Hillside Savings and Loan Association wilfully converted to their own use and the use of the La Salle Mortgage Corporation monies belonging to the Hillside Savings and Loan Association, and these counts alleged that McCully and the respondent knowingly aided and procured the commission of these offenses against the United States by Pfeiffer and Montalbano. The seventh count charged that Pfeiffer, the president of the Hillside Savings and Loan Association, unlawfuly received monies with intent to defraud the association that had been disbursed by the association to La Salle Mortgage Company. It alleged that Montalbano, McCully and the respondent knowingly aided and procured the commission of that offense against the United States. The eighth count made the same allegation, save it charged that Montalbano, the secretary-treasurer of the Hillside Savings and Loan Association, with intent to defraud had unlawfully received monies of the

association and it charged that Pfeiffer, McCully and respondent had knowingly aided and procured the commission of the crime.

The respondent, represented by counsel, pleaded guilty to the indictment and was sentenced to the term of one year and a day. He was granted parole prior to the expiration of the sentence and has since been discharged from parole.

The events which led to the indictment and the disciplinary proceeding against the respondent arose through the operation of a mortgage brokerage business, La Salle Mortgage Corporation, by him and Benjamin McCully. The Hillside Savings and Loan Association (hereafter, Hillside) was controlled by the Broadview Insurance Agency, which was owned by Pfeiffer and Montalbano. An agreement was made between La Salle Mortgage Company (hereafter, La Salle) and the Broadview Agency under which La Salle was to pay Pfeiffer and Montalbano each $125,000 for the half interest each owned in Broadview and another $25,000 was to be paid by La Salle to repay pledged accounts of directors of Hillside. An unsecured loan of $350,000 to La-Salle from Hillside was then procured and the respondent and McCully were thereby enabled to acquire the interests of Pfeiffer and Montalbano in the Broadview Agency and control of Hillside. The loan was obtained by La Salle from Hillside by having a land trust execute mortgages on improved real estate, which real estate La Salle did not own. It would appear that the respondent personally received only $3,500 of the difference between the $350,000 loan from Hillside and the $275,000 paid to acquire the Broadview Agency. The respondent says that the balance of the funds, excepting closing costs, was received by the wife of McCully and by La Salle. The loan was fully repaid to Hillside but operating difficulties caused the Federal insuring agency to suspend Hillside's activities. It was eventually taken over by another savings institution.

A division of the Grievance Committee of the Chicago

Bar Association heard evidence on the complaint that the respondent had been indicted, as has been described, had pleaded guilty to such charge and thereby had been guilty of conduct involving moral turpitude, which conduct was unprofessional and unbecoming a lawyer and tended to bring the legal profession into disrepute. The division recommended that the respondent be censured. However, the full Grievance Committee, after considering the report of the division, recommended that Gartland be suspended from the practice of law for one year. He protested this recommendation and requested oral argument before the Board of Managers. During this argument, inquiry was made by the Board as to the means by which the respondent and McCully repaid the loan made by Hillside to La Salle. The respondent's counsel was unable to answer certain of the questions posed, and the respondent, at his counsel's invitation, responded to some of these questions. After argument the Board remanded the matter to the Committee on Grievances "with instructions to conduct such further investigation and hearings and to take such action as the Committee may deem necessary and appropriate in light of [the] * * * transcript."

The division of the Grievance Committee which originally took testimony in the matter called the respondent to testify concerning the source of the funds used to repay the loan by Hillside to La Salle. The attorney for Gartland unsuccessfully objected to his being called on the ground that the complaint alleged misconduct relating only to the loan by Hillside and that no misconduct was charged relative to the repayment of the loan and the sources of repayment. The respondent testified that part of the loan was repaid from funds received by La Salle through building projects of La Salle or a subsidiary of La Salle. These projects were not related to Hillside. He testified, too, that a farm purchased by La Salle, or a subsidiary, for either $450,000 or

$500,000 had been mortgaged to Hillside to secure a loan of $600,000 made by Hillside. La Salle used the excess of the proceeds from this loan to repay part of the original Hillside loan. The respondent also testified that a subsidiary of La Salle had acquired an auditorium for between $70,000 and $90,000 and that this property was later mortgaged for between $140,000 and $180,000. He was certain Hillside was not the lender in this instance, but he was unable to recall the name of the lending association. The excess over the cost of the property's acquisition was also used toward the repayment of Hillside's original $350,000 loan. Over further objection by his counsel, the respondent said he did not know the status of this indebtedness and this because he had no contacts with McCully, who had taken sole control of La Salle. He testified that the Hillside mortgage on the farm had been foreclosed and that title to the farm passed to the Federal Savings and Loan Insurance Corporation. The Federal corporation later sold the farm for more than $100,000 in excess of the amount of the mortgage loan by Hillside, he said.

At the conclusion of this hearing the division recommended that the respondent be suspended until further order of this court. The Committee on Grievances, to which the matter was transmitted, recommended a one-year suspension from practice and the Board of Managers has made the same recommendation to this court.

The respondent contends that he was denied due process when inquiry was made into the circumstances of the repayment of the $350,000 loan to Hillside, which repayment, he complains, was not referred to in the complaint against the respondent and was irrelevant. He protests, too, that the transaction which led to his criminal conviction did not involve moral turpitude, fraud or conduct which brought the legal profession into disrepute and that the Commissioners erred in recommending his suspension. He argues that even

if the evidence relating to the source of the repayment funds is to be considered relevant and proper, his suspension from practice for one year was not warranted.

We do not find merit in the respondent's argument that it was improper to make inquiry of the circumstances of the repayment of the loan to Hillside. As we have noted, the complaint alleged the respondent's indictment, his plea of guilty and it charged that thereby he had been guilty of unbecoming conduct which tended to bring the profession into disrepute. The answer filed by the respondent admitted the indictment, the plea and the sentence imposed, but it denied that these caused him to be guilty of unprofessional conduct or of bringing the profession into disrepute. Answering further, the respondent pleaded that the entire amount of the loan had been repaid to Hillside, which incurred no loss through his conduct. The matter of repayment was raised by the respondent and obviously because he considered it to be a relevant and helpful circumstance. It could not be seriously contended that the Board did not have a right to verify the claim of repayment. Nor can one, we judge, reasonably protest the Board's inquiry into the circumstances of a matter offered by the respondent as relevant and mitigating.

*In re Ruffalo*, 390 U.S. 544, 20 L. Ed. 2d 117, 88 S. Ct. 1222, which the respondent cites, is irrelevant here. There the charge, which was under review, had not been in the original charges against the attorney. It was only after the attorney and a person employed by him, which employment was ethically in question, had testified that the new charge was added. No evidence thereafter was taken before the disciplinary board. The Supreme Court held that the attorney was entitled to procedural due process, which includes a fair notice of the charge against him. The decision has no applicability here.

We consider that the respondent's plea of guilty to the indictment involved clearly warrants the discipline recom-

mended. It is clear under our decisions that conviction of a crime involving moral turpitude is to be regarded as conclusive evidence of guilt and ground for disciplinary action. The record of conviction is deemed conclusive of guilt and we will not go behind that record. This court has said that fraud or fraudulent conduct on the part of an attorney which results in his conviction necessarily connotes moral turpitude. (*In re Teitelbaum,* 13 Ill.2d 586, 588-590.) Considering the allegations of the indictment, section 2 of Title 18, United States Code, and the character of the respondent's conduct, which formed the background for the indictment, it is clear that his conviction warranted the undertaking of disciplinary proceedings and the return of the recommendation. The conduct was unbecoming and tended to bring the legal profession into disrepute.

We judge that the sanction advised by the Board is not excessive. We are not dissuaded from this conclusion by the otherwise unblemished character of the respondent's professional life. The first purpose of a proceeding as this is to safeguard the public, maintain the integrity of the profession and to protect the administration of justice from reproach. The recommendation of the Board is not inappropriate and we adopt it. A judgment suspending the respondent from practice for one year is entered.

*Respondent suspended.*

Mr. JUSTICE SCHAEFER took no part in the consideration or decision of this case.