(No. 44780.—

*In re* RICHARD E. STEINBRECHER, Attorney Respondent.

*Opinion filed January 26, 1973.*

SCHAEFER, J., took no part.

BERNARD V. NARUSIS, of Cary, for respondent.

THOMAS J. MURPHY, of Springfield, for Illinois State Bar Association, *amicus curiae.*

MR. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

At the conclusion of a 1969 bench trial in the United States District Court for the Northern District of Illinois, Eastern Division, respondent Richard Steinbrecher was found guilty on both counts of an indictment charging he aided and abetted John Laures, the president of a Federally insured savings and loan institution, in obtaining loans on real estate in violation of 18 U.S.C. sec. 1006. Respondent was sentenced to concurrent terms of three years imprisonment on each count. The judgments were affirmed on appeal (*United States v. Steinbrecher (7th cir.), 427 F.2d 530, cert. denied, 400 U.S. 916, 27 L. Ed. 2d 156, 91 S.*

*Ct. 175*), and respondent was released on parole after serving approximately nine months of his sentence.

The district court, in February, 1971, struck respondent's name from the roll of attorneys authorized to practice before that court. The proceedings now before us were commenced in August, 1970, and a hearing at which respondent was present and testified was held before a hearing panel of the Committee on Grievances of the Illinois State Bar Association sitting as commissioners of this court under our Rule 751. The report of the hearing division found that respondent, then 58 years of age, married and the father of two adult children, had been convicted of crimes involving moral turpitude, and that his conviction and his actions upon which it was based tended to defeat the administration of justice and have brought the legal profession and the courts into disrepute. Disbarment was recommended, and that report and recommendation is concurred in by the Board of Governors of the Illinois State Bar Association.

The facts underlying the complaint against respondent are perhaps best summarized by quoting the Court of Appeals opinion, at pages 531 and 532:

> "John Laures was president of the Crystal Lake Savings and Loan Association (Crystal) in 1962 and 1963. Steinbrecher was an attorney who represented Laures in various business transactions. On September 22, 1962, upon the recommendation of Laures, Crystal made a loan to Frank Howard, Jr. of $225,000 to purchase a piece of real estate located at 3345 N. Marshfield, Chicago, Illinois, from Howard Hurwith at a price of $125,000. Hurwith testified that he never met Howard but negotiated the sale with Laures. Crystal issued a check for $55,000 to the mortgagee and a check for the remainder, $160,000, was issued to Howard and the defendant Steinbrecher as escrowee. The check, endorsed by the

defendant,[1] was deposited in the bank account of defendant's law firm and from this account various disbursements were made by Steinbrecher: $70,000 was paid to Hurwith and the balance of the money was used to pay personal loans of Laures. The defendant Steinbrecher also prepared Laures' 1962 income tax return which reported income on the Marshfield property.

Crystal made another loan to Frank Howard on July 12, 1963, for the purpose of purchasing a parcel of real estate located at 3334 W. Ainslie Street, Chicago, Illinois, on the recommendation of Laures. The purchase price of the property was $128,805 and the amount of the loan was $255,000. The negotiations with the owner of the property were made by the defendant Steinbrecher. The loan proceeds check was endorsed by the defendant and deposited in his firm's account. Again all disbursements from the loan were made by Steinbrecher with the excess funds being used to pay off the personal obligations of Laures. Steinbrecher prepared Laures' 1963 income tax return which included reported rental income from both the Marshfield and Ainslie properties.

Howard testified that Laures was his neighbor and that Laures had asked him to hold certain properties in his name in order that Laures could get a better price. Laures did not testify at the trial.

Steinbrecher took the witness stand and said that he lacked knowledge of any unlawful acts. It was his impression that Howard purchased the real estate for himself. While the facts create some suspicion, he claims that he verified Howard's

---

[1] There is a conflict in the evidence as to whether or not Howard endorsed the check.

participation by calling a trust officer at the bank which was the trustee for the parcels of real estate. The reported conversation between Stein-brecher and the trust officer was stricken as hearsay and no attempt was made to have the trust officer testify."

Respondent's arguments here are principally concerned with whether his conviction is conclusive evidence of the commission of a crime involving moral turpitude; whether he was denied adequate representation by counsel and whether the commissioners gave due consideration to mitigating evidence.

We consider there to be no merit in respondent's contention that the crime of which he stands convicted does not involve moral turpitude. An analogous situation existed in *In re Gartland, 47 Ill.2d 177,* where a similar argument was made and rejected.

The claim that respondent was denied adequate representation by counsel is predicated upon the circumstances surrounding the original hearing in this matter. The complaint, as earlier noted, was filed in August, 1970, subsequent to the affirmance of the conviction by the 7th Circuit Court of Appeals (May 25, 1970) but prior to the denial of *certiorari* by the United States Supreme Court (November 16, 1970). Respondent commenced serving his sentence in January, 1971. The record contains several letters from respondent, one dated September 14, 1970, indicating respondent had filed a *pro se* answer to the complaint. The original hearing date set by the commissioners appears to have been January 14, 1971. It was continued at respondent's request to February 26 and then reset to March 12. Meanwhile counsel for the Illinois State Bar Association resigned, respondent was hospitalized, and the hearing again reset, this time for May 14. Respondent's associate, Bernard Narusis, indicated by letter of April 5 his intention to seek a continuance, and his desire to secure copies of the documents then on file, which he had

requested in an earlier telephone call. By letter of April 7, he was advised that copies of the filed documents would be sent him upon his filing his appearance on behalf of respondent. In a letter dated May 5, respondent's associate indicated he would be engaged, on the date of the hearing, in a trial in the McHenry County circuit court and requested a continuance, preferably until after respondent had been released from prison. Counsel for *amicus* (Illinois State Bar Association) apparently telephoned Narusis in response to this letter, indicating to him that until he filed an appearance and motion for continuance "there was nothing before the panel to consider," and that *amicus* would oppose a continuance. A letter to attorney Narusis from counsel for *amicus,* dated May 17, three days *after* the hearing had been concluded, refers to the telephone conversation some days earlier, states "we will be going ahead on the 14th", and that respondent "will be present at the hearing on the 14th." It further states that counsel for *amicus* would oppose a motion for a continuance of the hearing should respondent's counsel decide to file one. There is no explanation of the purpose of this letter which relates only to what is expected to occur at a hearing held three days before the letter was written.

On April 27 a writ of *habeas corpus ad testificandum* had been issued at the request of counsel for *amicus* by the Federal District Court in Springfield requiring respondent's appearance at the May 14 hearing. It appears that respondent was able to obtain a "furlough" for the purpose of appearing at the hearing and that the writ was not executed.

On May 14 a hearing was held before the hearing panel. Respondent was present without counsel, but participated in the hearing without objection. His testimony consisted principally of a denial of any knowledge or reason to know that the lending agency was being defrauded; the reasons he believed himself innocent of the crime of which he was convicted; that he had not

personally profited from the proceeds of the fraudulent loans since he had received only $200 on one of the transactions and 1% ($1,500) on the other as fees for his services; that his co-defendant, Laures, had he been willing to testify, would have corroborated respondent's lack of knowledge of the fraudulent aspects of the transactions; and that no person or entity had suffered a monetary loss except the bonding company which had been compelled to pay out $200,000. The amount subsequently recovered by the bonding company is not established by the record.

We cannot agree that the procedure here denied respondent due process or that he was arbitrarily compelled to proceed without counsel. Respondent had known of the pendency of the proceedings, and his answer to the complaint had been filed by him some nine months prior to the hearing. While his associate in the practice had telephoned and written counsel for *amicus,* no appearance or motion for a continuance had been filed. These facts, coupled with the total absence of any objection by respondent to proceeding at the hearing without counsel, persuade us that the action of the hearing panel was not unreasonable.

We come then to respondent's contention that the commissioners failed to give proper consideration to the mitigating factors established on his behalf. Included therein are what appear to be copies of a substantial number of affidavits and letters from members of the bar and business and social acquaintances, apparently submitted in support of respondent's application for parole. For the most part they affirm the writer's belief in respondent's integrity, and those from his home community attest to the community's readiness to accept his return. Among them are a letter from counsel for the bonding company above referred to expressing appreciation for respondent's cooperation in the company's attempts to mitigate its losses, and a lengthy affidavit from John Laures, the principal whom respondent was con-

victed of aiding and abetting. These documents were not presented to the hearing panel, but we do not regard respondent as having been prejudiced by their absence. They were before the Board of Governors in their review of the hearing panel's findings and recommendations which were concurred in by the Board. In any event, final responsibility for determining the severity of the discipline to be imposed rests with this court, and we have examined and considered them.

It must be noted that the affidavit of John Laures, if its conclusions are accepted at face value, would tend to completely exonerate respondent from responsibility. We have repeatedly held that conviction of a crime involving moral turpitude is to be regarded as conclusive evidence of guilt and constitutes adequate ground for disbarment or a lesser form of discipline (*In re Lytton, 48 Ill.2d 390, 391; In re Gartland, 47 Ill.2d 177, 183*), and those holdings preclude impeachment of respondent's conviction. That affidavit is, however, admissible and relevant with reference to mitigating circumstances.

In considering the discipline to be imposed in this case we note that in *Gartland,* which, as we earlier stated, involved an analogous situation, the recommendation of the Board of Managers of the Chicago Bar Association, adopted by this court, was that the respondent there be suspended from practice for one year. While the circumstances there were not identical to those here, the disparity is not proportionate to that in the recommended discipline—the difference between one year's suspension and disbarment. Relevant, also, in considering the disposition of this matter is the apparently undisputed fact that respondent did not personally profit from the scheme resulting in his conviction except for a total of $1,700 received as fees for his services.

Considering all of the circumstances evident in the record of this case it is our judgment that disbarment is not warranted. In our opinion the joint objectives of

protecting the public, maintaining the integrity of the profession and protecting the administration of justice from reproach are adequately served by respondent's suspension from the practice of law for a period of two years, and it is so ordered.

*Respondent suspended.*

MR. JUSTICE SCHAEFER took no part in the consideration or decision of this case.