(No. 62612.—

*In re* JAMES JOSEPH REAGAN, Attorney, Respondent.

*Opinion filed May 21, 1986.*

John A. Holtaway, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

Bernard B. Nathan, of Chicago, for respondent.

JUSTICE SIMON delivered the opinion of the court:

On March 21, 1982, this court suspended respondent from the practice of law until further order of the court following his conviction on May 16, 1981, on eight counts of mail fraud. In May 1984, respondent filed a petition for reinstatement pursuant to Supreme Court Rule 767

(103 Ill. 2d R. 767). The Administrator then filed a motion to stay the petition and to schedule the hearing required by Supreme Court Rule 761 (103 Ill. 2d R. 761) to determine the discipline appropriate when an attorney has been convicted of a crime involving moral turpitude. In July 1984, this court entered an order dismissing respondent's petition without prejudice and allowing the Administrator's motion for a hearing. The Hearing Board found that respondent's conduct violated Rules 1—102(3), (4), and (5) of the Code of Professional Responsibility (87 Ill. 2d Rules 1—102(3), (4), and (5)) and had brought the legal profession into disrepute. It recommended that respondent be suspended from the practice of law for a period of five years *nunc pro tunc* to March 21, 1982. The Review Board affirmed the Hearing Board's findings and recommendation. Both respondent and the Administrator filed exceptions to the report and recommendation of the Review Board.

The facts are not in dispute. Respondent was licensed to practice law in Illinois in 1963. Beginning in 1967 and continuing for a period of approximately 10 years, respondent aided and abetted Richard Link, a real estate representative for Union Oil Company, in eight or 10 transactions that were part of a scheme to defraud Union Oil. In transactions commonly known as "turn around" deals, a nominee for Link purchased property which was then resold to Union Oil at a higher price. The difference between the amount paid by the nominee and that received from Union Oil was kept by Link. Respondent represented the nominee in these transactions and was paid attorney fees amounting to about $8,500 over the 10-year period. In addition to handling the closings in these transactions, respondent once collateralized a loan made to Link in connection with one of the transactions; used as nominees for Link two corporations, one of which he headed as president, and the other of which

listed his three-year-old daughter as secretary; and funneled money from the transactions through his trust account.

In the fall of 1980, a special grand jury in the United States District Court for the Northern District of Illinois indicted respondent on eight counts of mail fraud in connection with five of the above transactions. He was convicted on all counts and sentenced to concurrent terms of two years. His convictions were affirmed on appeal, and the United States Supreme Court denied *certiorari*. Respondent served eight months of the sentence and participated in a work-release program for two months. His parole terminated in June 1985. Following his suspension by this court, respondent complied with all the requirements mandated by this court to be taken by a suspended lawyer, and he has not practiced law since that time.

At the hearing before the Hearing Board, respondent admitted his guilt and expressed profound remorse for his conduct. He has settled a civil suit brought against him by Union Oil and its insurance carrier by paying them $287,000, which included satisfaction of the judgment previously entered against him of $260,650 and payment of interest, costs, and attorney fees. Following his release from prison, he enrolled in a graduate program at the Chicago Theological Seminary, and expects to receive a master's degree in divinity in November 1986. He also supervises his wife's interest in several businesses. Respondent presented the testimony of a number of character witnesses, including a justice of the Illinois appellate court, two judges of the circuit court of Cook County, two practicing lawyers, a minister, a businessman, a director of a YMCA, and a personal friend. They all testified to their personal knowledge of respondent's good character or to respondent's reputation for honesty and truthfulness in the community or both.

Respondent contends that the appropriate sanction in this case is suspension for a period of three years *nunc pro tunc* to March 21, 1982. He argues that the five-year suspension recommended by the Hearing Board is inconsistent with the discipline imposed in cases involving similar misconduct. The Administrator argues, on the other hand, that the recommended five-year suspension is inconsistent with cases in which similar misconduct resulted in disbarment. It is axiomatic in attorney discipline cases that although each case is unique and must be judged on its facts, there must be a degree of uniformity or consistency in the selection of sanctions in similar cases. *In re Wigoda* (1979), 77 Ill. 2d 154, 163.

It is also axiomatic that to safeguard the public, maintain the integrity of the legal profession, and protect the administration of justice from reproach (*In re Wonais* (1979), 78 Ill. 2d 121, 124), an attorney seeking reinstatement to the practice of law must show by clear and convincing evidence that he should be readmitted (*In re Schechet* (1985), 105 Ill. 2d 516, 521). Since the sanction respondent argues for would result in his immediate readmission to the practice of law, it is appropriate to consider the factors set out in Rule 767(f) for determining whether reinstatement is indicated:

"(1) the nature of the misconduct for which the petitioner was disciplined;

(2) the maturity and experience of the petitioner at the time discipline was imposed;

(3) whether the petitioner recognizes the nature and seriousness of the misconduct;

(4) when applicable, whether petitioner has made restitution;

(5) the petitioner's conduct since discipline was imposed; and

(6) the petitioner's candor and forthrightness in presenting evidence in support of the petition." 103 Ill. 2d R. 767.

Respondent engaged in serious misconduct leading to a criminal conviction for his participation in a scheme to defraud Union Oil. A crime in which fraud is an element involves moral turpitude. (*In re Fumo* (1972), 52 Ill. 2d 307, 309; *In re Eaton* (1958), 14 Ill. 2d 338, 340; *In re Needham* (1936), 364 Ill. 65, 70.) However, respondent profited very little from the transactions in question, receiving only about $8,500 in attorney fees, which may properly be considered as a mitigating factor. (See *In re Steinbrecher* (1973), 53 Ill. 2d 413, 420 (respondent suspended for two years).) Moreover, like the respondent in *Steinbrecher* and unlike the respondent in *In re Fumo* (1972), 52 Ill. 2d 307 (respondent disbarred), the respondent's participation in the fraudulent scheme in this case appears to have been limited to that of aider and abettor rather than involvement as a principal.

Respondent had been practicing law for four years when the misconduct for which he was convicted began and continued for a period of about 10 years. However, there is no evidence of any misconduct apart from the events giving rise to these proceedings. Further, respondent has acknowledged his guilt and expressed remorse for his conduct. He has also satisfied the civil judgment entered against him, which resulted in the loss to him of $287,000. While this payment was not specifically called "restitution," Union Oil has been made whole for the transactions in which respondent participated, from which he had gained only about $8,500. Moreover, respondent has not been able to recover from Link, who is apparently without assets.

Respondent adds that the testimony of his character witnesses establish the community's readiness to accept his return as a practicing attorney and its belief in his integrity. Nothing in the record shows that the respondent committed any transgressions since his suspension.

Consideration of the facts presented leads us to con-

clude that the sanction recommended by the Review Board was appropriate in this case, and we find no reason to disturb it. The respondent is therefore suspended from the practice of law for a period of five years *nunc pro tunc* to March 21, 1982.

*Respondent suspended.*