(No. 33195.—▆▆▆▆▆▆▆▆▆

IN RE MICHAEL A. SERRITELLA, Attorney, Respondent.

*Opinion filed February 16, 1955—Rehearing denied April 15, 1955.*

CHARLES LEVITON, of Chicago, *amicus curiae.*

JOSEPH I. BULGER, of Chicago, for respondent.

Mr. JUSTICE HERSHEY delivered he opinion of the court:

The committee on grievances of the Chicago Bar Association, acting as commissioners of this court pursuant to Supreme Court Rule 59, have filed a report with us which contains a recommendation that the respondent, an attorney of this bar, be censured for conduct tending to bring the legal profession into disrepute.

On April 16, 1953, the committee on inquiry of the Chicago Bar Association filed a complaint before the grievance committee, charging the respondent, who was admitted to the practice of law in this State on January 20, 1947, with the following: that during the period from 1949 to 1952, the respondent came into possession of certain Cook County payroll checks made payable to one James Addison; that the respondent endorsed the name James Addison and his own name to said checks and cashed them at a currency exchange; that at the time of endorsing and cashing each of said checks the respondent either (a) knew he had no authority to endorse the name James Addison and therefore forged said name with intent to prejudice, damage or defraud James Addison or the County of Cook or (b) knew James Addison was a fictitious person and so was aiding and abetting the defrauding of the County of Cook by cashing payroll checks issued to a fictitious person.

The respondent answered, denying any fraudulent or criminal intent, but admitting the signing of the name

James Addison on several payroll checks with his own name below and cashing them as an accommodation for his mother-in-law. He alleged that he received no benefit from the transactions and that the checks were issued for work done. A letter written by the respondent to the secretary of the committee on inquiry, in which he explained his part in handling the checks, was attached as an exhibit.

The commissioners held hearings, at which evidence was adduced by the complaining committee and the respondent. Afterward the commissioners made their report recommending censure, to which the respondent made objections. After a hearing, the objections were overruled.

The evidence discloses that on seven separate occasions the respondent came into possession of a payroll check, sometimes termed a payroll warrant, directing the treasurer of Cook County to pay a certain amount to one James Addison. Six of these checks were for $83.10, and the amount indicated on the other was $56.52. The respondent affixed the name James Addison and his own signature as endorsements on each check and cashed it at a currency exchange.

The circumstances surrounding said transactions, as related by the respondent, were as follows: The respondent maintained a law office above a currency exchange, and as an accommodation for his mother-in-law, Mrs. James (Lillian) Adduci, he would often assist her in the payment of bills by taking her funds and paying bills for her at the currency exchange. Sometimes she would give him cash for this purpose and sometimes checks. He would never question her as to where she got the money or the checks, since she was a close relative whom he considered almost as a mother. From time to time she gave him some checks made payable to James Addison. He did not notice that the first of these checks did not contain the endorsement of James Addison until he presented it in payment of one of Mrs. Adduci's bills. But he felt so certain that

it was all right he unhesitatingly endorsed the name James Addison and signed his own name beneath. He signed the other checks in the same manner also, not knowing at any time an individual named James Addison and not knowing from whom his mother-in-law obtained the checks. Any cash he received from the checks or the net proceeds after the payment of her bills, he gave back to his mother-in-law. He at no time received any benefit, directly or indirectly, from the checks. The respondent further testified he has since learned that James Addison was an alias for his wife's uncle, Joseph Adduci.

Joseph Adduci, a brother-in-law of Mrs. James (Lillian) Adduci, testified as a witness for the respondent. He said he also used the name James Addison and that he had for a period of some twenty-six to thirty months directed the county auditor to mail checks made payable to James Addison to him at Mrs. Adduci's address. He stated that he authorized Mrs. Adduci or any of her immediate family to endorse his name on these checks, and she accounted to him for all of them. He did not believe, however, the respondent had any knowledge that he was James Addison nor did he discuss the checks with him. There was a pending indictment charging him with conspiracy to obtain said checks illegally from the county, and he refused to answer several questions on the ground his answers might incriminate him.

Mrs. James (Lillian) Adduci also testified for the respondent. She said Joseph Adduci was also known to her as James Addison and that he used to receive checks in the mail addressed to her home. She said Joseph Adduci authorized her or any one of the family to cash the checks for him so he could get the cash. On some occasions she gave the respondent these checks for cashing but did not recall telling him who James Addison was or where she acquired the checks. In answer to a question asking her if she told the respondent to put the name James Addison

on the checks, she replied: "Yes, I did, because Mr. Adduci, Joe Adduci, that is, authorized me or any one of the family to cash the checks for him so he could get the cash, and Mike [the respondent] would come over every now and then, and when I couldn't get out to cash the checks, I would give them to Mike to cash for me."

In March, 1952, James Adduci and Nicholas Carr were indicted along with Joseph Adduci for conspiring to defraud the county of money represented by checks issued to Joseph Adduci for alleged services of one James Addison who it was alleged did no work. James Adduci and Nicholas Carr were tried on said indictment and found not guilty. The assistant State's Attorney, who tried that case, said the respondent co-operated fully with him in the matter. He said the respondent testified before the grand jury and also before the petit jury in the trial of James Adduci and Nicholas Carr.

A circuit court judge testified that the respondent's reputation professionally was good, and the pastor of the church which respondent attended testified that his reputation in the neighborhood was good.

Counsel for the respondent contends that the evidence fails to support a recommendation of censure. It is argued that the alleged misconduct was not done as an attorney, that there is nothing in the record to show the respondent had any ulterior motive or intended to defraud anyone, that there is nothing to suggest that what the respondent did was reckless or irresponsible, and that the payroll checks or warrants were non-negotiable instruments and pass from holder to holder by delivery or assignment. In short, he insists the commissioners, by their report, have introduced a new concept of conduct for the profession—a concept of guilt by suspicion and by unavoidable and innocent association.

In a proceeding of this nature, an attorney is presumed to be innocent of the charges until proved guilty, and the

burden of proof is on those making the charges. (4 I.L.P., Attorneys and Counselors, sec. 157.) The weight of the evidence is governed by the same rules applicable to other cases on questions of fact. *In re Mitgang,* 385 Ill. 311.

First, it is clear that there is no evidence supporting the charges filed against the respondent relative to his knowing that he had no authority to endorse the name James Addison and so forged said name with intent to defraud James Addison or Cook County, or of his knowing that James Addison was a fictitious person and so aided and abetted in defrauding Cook County. On the contrary, the commissioners state in their report that it cannot be said the respondent endorsed the checks without authority. They further state it is not shown that the checks were issued without consideration pursuant to a scheme to defraud in that Joseph Adduci alias James Addison did no work for the county. They conclude, however, as follows: "The record does show, however, that the respondent was guilty of conduct which tended to bring the profession into disrepute. He endorsed the name of a nonexistent person, which was an alias used by his uncle in obtaining pay from the County of Cook. Such conduct would create suspicion if indulged in by a layman, and certainly deserved severe censure where the acts are those of a member of this bar. To say the least, respondent's conduct in endorsing these payroll checks was irresponsible and reckless."

The acts here complained of were not done by the respondent in his capacity as an attorney. However, this fact, in and of itself, would not necessarily preclude the imposition of punishment by this court. (4 I.L.P., Attorneys and Counselors, sec. 150.) "It is not necessary that his acts be strictly in the discharge of professional duties. Any act which evidences want of professional or personal honesty, such as renders him unworthy of public confidence, affords sufficient grounds for disbarment." (*In re Melin,* 410 Ill. 332, 337.) The foregoing rule is of even

more compelling force in determining whether a less severe discipline, censure, should be administered. But before any discipline is warranted for acts done outside of an attorney's professional capacity, it should be demonstrated that they are such as tend to show him an unfit person to discharge the obligations of an attorney and tend to bring the legal profession into disrepute. We are charged with the responsibility of supervising the professional conduct of attorneys practicing in this State, and we are interested in their private conduct only in so far as such relates to their professional competence or affects the dignity of the legal profession.

It must be recognized at the outset that the respondent should not have signed the name James Addison to these checks without at least making further inquiries of his mother-in-law, and he showed poor judgment in doing so. However, there is nothing to show he had any ulterior motive or intended to defraud anyone. He received no personal benefit for his efforts, and the proof shows he had actual authority to sign and cash the checks. All were personal transactions between him and his mother-in-law, and there is no evidence which casts doubt upon his personal honesty in the matter. In the case of *In re Mitgang,* 385 Ill. 311, we said at page 324: "In order to warrant disbarment or suspension, the record must be free from doubt not only as to the act charged but also as to the motive with which it is done. [Citations.] A lawyer will not be subjected to discipline merely upon suspicious circumstances."

Summarizing, the commissioners admit in their report that there is no evidence in the record which supports either of the charges filed against the respondent. Specifically, it is not shown that he acted from any improper or illegal motive; that he derived any personal benefit from the transactions; that he participated in or had knowledge of any fraudulent scheme; or that he did not have actual

authority to do what he did. In addition, it is undisputed that his prior record and reputation, both personally and professionally, are good.

The record further fails to disclose that the commissioners subpoenaed any witness to rebut the testimony given by the respondent or his witnesses, as they are empowered to do by Rule 59. However, as an alternative to the recommendation of censure, they request us to issue a rule against witness Joseph Adduci, commanding him to show cause why he should not be punished for contempt of this court for failure to answer certain questions propounded to him on cross-examination. We have examined the questions which the witness refused to answer and are of the opinion that they do not pertain to anything which the respondent might have done or might have known about in connection with the payroll checks under consideration.

While we do not condone what the respondent did and believe he exercised poor judgment in so acting, upon the basis of what appears in this record we do not believe he was guilty of acts which warrant our censuring him for conduct tending to bring the legal profession into disrepute. The recommendation of the commissioners is denied and the rule discharged.

*Rule discharged.*