(No. 49021.

*In re* GEORGE BRADFORD COOK, an Attorney.

*Opinion filed June 1, 1977.*

John Dixon, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

Gerald W. Shea, of Berwyn, William J. Martin, Ltd., of Chicago, and Jonathan L. Rosner, of New York City, for respondent.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

Pursuant to Rule 763 (58 Ill. 2d R. 763), Carl H. Rolewick, Administrator of the Attorney Registration and Disciplinary Commission, hereafter petitioner, filed a petition alleging that effective October 14, 1975, respondent, George Bradford Cook, was suspended from the practice of law in the State of Nebraska and asking "that the Respondent be suspended from the practice of law in the State of Illinois for the same period of time and upon the same conditions as ordered by the Supreme Court of Nebraska." The opinion of the Supreme Court of Nebraska shows that respondent, admitted to the bars of Nebraska and Illinois in 1962, was suspended for a period of three years and until compliance with certain conditions set forth in the judgment order. Respondent requested a hearing and a panel of the Hearing Board recommended

that respondent be suspended from the practice of law for six months. Both petitioner and respondent filed exceptions to the report of the Hearing Board. The Review Board recommended "that the Respondent be suspended from the practice of law for three years and until further order of court, said suspension to be deemed effective as of October 14, 1975, the date of entry of the final order of the Nebraska Supreme Court."

Rule 763 provides:

"If an attorney licensed to practice law in this State and another State is disciplined in the foreign State, he may be subjected to the same discipline in this State, to run concurrently with the discipline in the foreign State, upon proof of the order of the foreign State imposing the discipline.

The Administrator shall initiate proceedings under this rule by filing a petition with the court, to which a certified copy of the order of the foreign State is attached, together with proof of service upon the attorney. Within 21 days after service of a copy of the petition upon him the attorney may request in writing a hearing on the petition. The hearing shall be held before the Hearing Board no less than 14 days after notice thereof is given to the attorney respondent and the Administrator. At the hearing the attorney may be heard only on the issues as to (1) whether or not the order of the foreign State was entered; (2) whether it applies to the attorney; (3) whether it remains in full force and effect; (4) whether the procedure in the foreign State resulting in the order was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process of law; and (5) whether the conduct of the attorney warrants substantially less discipline in this State.

If an attorney is suspended or disbarred in this State pursuant to this rule, the reinstatement in this State shall be governed by the provisions of Rule 767.

Nothing in this rule shall prohibit the institution of independent disciplinary proceedings in this State against any attorney based upon his conduct in another State, and, in the event the Administrator elects to proceed independently, any discipline imposed in this State shall

not be limited to the discipline ordered by a foreign State." 58 Ill. 2d R. 763.

The record shows that in September 1971, after practicing law in Chicago for approximately nine years, respondent joined the Securities and Exchange Commission as general counsel. Some months later he was made director of the division of market regulation, and later was appointed chairman of the Commission. During this period of employment with the Securities and Exchange Commission, respondent exercised supervisory control over an investigation which involved certain activities of Robert Vesco. In November 1972, a civil complaint was filed against Vesco, which *inter alia* concerned the sum of $250,000 which apparently came from various Vesco corporations, and, ultimately, in the form of cash, was contributed to the Committee to Reelect Richard M. Nixon. The money was received by Maurice Stans, then finance chairman of the committee. Stans and respondent had several conversations concerning the Vesco investigation, the contribution, and the form of the civil complaint which was to be filed. These conversations took place before the complaint was filed and generally involved Stans' request that the complaint be modified, or that in some manner the disclosure of the contribution to the Committee to Reelect be delayed. Although it appears that respondent assisted in delaying the publication of the information, it does not appear that he interfered with or prevented the investigation, or the ultimate filing of the complaint.

While the investigation of Vesco was in progress, a grand jury of the United States District Court for the Southern District of New York was hearing testimony concerning Stans and John Mitchell, the former Attorney General of the United States. On March 5, 1973, Stans appeared before the grand jury and apparently testified that he had not spoken with anyone at the Securities and Exchange Commission concerning the Vesco complaint

prior to the time that the complaint was filed. On March 7, 1973, Stans requested that respondent meet him at the White House. At that meeting he told respondent of his grand jury appearance, and his testimony, and urged respondent to testify in the same manner. Respondent agreed to do so. On April 19, 1973, respondent appeared before the grand jury and testified falsely as to his conversations with Stans. Subsequently, on May 1 and 14, 1973, similar false testimony was given by respondent before a subcommittee on appropriations, chaired by Senator Proxmire of Wisconsin.

On May 3, 1973, the United States Attorney for the Southern District of New York confronted respondent with the suggestion that his testimony on April 19, 1973, had not been entirely candid. Respondent admitted the falsity of his testimony and an affidavit of the District Attorney contained in the record shows that thereafter respondent cooperated fully both before the grand jury and during the trial of Messrs. Mitchell and Stans. At the trial of Mitchell and Stans, respondent admitted during cross-examination that he had testified falsely before the grand jury.

Although before the Hearing Board respondent contended that the procedure in Nebraska did not accord him due process of law, no such contention is made here, and the sole issue presented is whether respondent's conduct "warrants substantially less discipline" than that imposed in Nebraska.

Respondent contends that the misconduct of which he was found guilty warrants substantially less discipline than was imposed in Nebraska, and that any period of suspension ordered by this court should be considered as having begun on May 16, 1973, the date on which he voluntarily withdrew from the practice of law.

Petitioner contends, as he did before the Review Board, that the Hearing Board erred in admitting new evidence not considered in the Nebraska proceedings. He

argues that, unlike cases involving a criminal conviction, in proceedings instituted pursuant to Rule 763 evidence relating to a respondent's conduct is not admissible and that only evidence concerning a respondent's reputation and character is admissible to permit him "to demonstrate, if he can, that a lesser sanction should be imposed in Illinois."

We are of the opinion that in determining whether the conduct of the attorney in a reciprocal disciplinary action "warrants substantially less discipline in this State" a distinction should be drawn between discipline imposed in a State in which the misconduct occurred, and the situation here, where the misconduct occurred neither in Nebraska nor in this jurisdiction, and there is nothing in the misconduct committed or in the proposed sanction which is unique to either jurisdiction. Under these circumstances we conclude that the discipline should be determined in the same manner as though respondent stood convicted of a criminal offense.

In *In re Lytton,* 48 Ill. 2d 390, in which the respondent had been found guilty, on a plea of *nolo contendere,* of a violation of section 17(a) of the Securities Act of 1933 (15 U.S.C. sec. 77q(a)), the court in considering the appropriate sanction to be imposed said: "It is well established that conviction of a crime involving moral turpitude is conclusive evidence of an attorney's guilt and is ground for disbarment or other disciplinary action. [Citations.] It is equally well settled that final responsibility for determining the discipline to be imposed rests in this court and that in determining an appropriate penalty we may properly consider all facts and circumstances in aggravation and mitigation, including respondent's actual conduct. [Citations.] " (48 Ill. 2d 390, 391.) We hold, therefore, that the Hearing Board did not err in admitting evidence of respondent's actual conduct. *In re Crane,* 23 Ill. 2d 398, 400.

The determination of an appropriate sanction is

extremely difficult, and as was said in *In re Andros,* 64 Ill. 2d 419, 425-26, "While a degree of uniformity in the application of attorney discipline is desirable, each case must still be determined on its own merits." Respondent, in testifying falsely on three occasions, was guilty of misconduct which tended to defeat the administration of justice and bring the profession into disrepute. Balanced against this serious offense is the finding of the Hearing Board that, except for the misconduct involved in this proceeding, respondent had practiced law ethically and apparently with considerable skill and ability. The record of the proceedings both here and in Nebraska demonstrates an awareness of the seriousness of his misconduct and contrition for his failure to comport with the standards of conduct expected of a member of the legal profession. The record shows that many individuals of stature in the legal profession and in the business community have faith in respondent's ability to practice his profession honorably in the future.

On this record we conclude that, as recommended by the Review Board, an appropriate sanction is a suspension for a period of 3 years, effective as of October 14, 1975.

*Respondent suspended.*