[No. C.D. 9549. En Banc. September 7, 1978.]

*In the Matter of the Disciplinary Proceeding Against* MICHAEL F. LAVERY, *an Attorney at Law.*

*Robert T. Farrell* and *Christopher Pence,* for Bar Association.

*Michael F. Lavery,* pro sê.

HOROWITZ, J.—The Washington State Bar Association has recommended to this court that Michael F. Lavery be suspended from the practice of law for a period of 30 days. For the reasons set out hereinafter, we impose a suspension for a period of 90 days.

Michael Lavery graduated from law school in May 1975 with a cumulative grade point average of 2.322. After failing the bar examination that summer, he undertook what he describes as a research project, apparently designed to reflect his disillusionment and discouragement with law school and the legal profession. He falsified his law school transcript to show a grade point average of 3.79 and wrote bogus and extremely favorable letters of recommendation over the photocopied signatures of several of his law school professors. These falsified documents were sent to prospective employers, both public and private, with letters of application for a job. The purpose of this project, according to respondent, was to find out if it is not *what* you know, but *who* you know, that counts when a young law graduate looks for a job. In the meantime he passed the February 1976 bar examination and was admitted to the practice of law in May 1976.

Andrew Aberle, an attorney in Timber Lake, South Dakota, was one of those receiving a letter of application

and altered transcript from respondent. Mr. Aberle wrote in answer, expressing his interest and requesting more information. In respondent's letter of reply he enclosed altered letters of recommendation and a note from his wife expressing her eagerness to move from Washington to the farm country of South Dakota. Mr. Aberle attempted to verify respondent's references and discovered, through conversations with law school personnel, that they had been falsified. He then terminated his consideration of respondent's application. The professors whose names had been wrongly used in the letters, informed of respondent's activities by Mr. Aberle, discussed the matter with the dean of the law school, who subsequently filed a complaint with the Bar Association against respondent.

The Bar Association filed a formal complaint against respondent in November 1976. Respondent answered by an unsworn statement denying the charges. He had written a letter of explanation to the Association, describing his research project and his reasons for carrying it out. He disclaimed any intention of interviewing for or accepting a job based on the false documents he had prepared. He submitted to the Association a manuscript and diary, and numerous letters and information sheets from prospective employers, as documentation of his research project. The brief manuscript is a personal account of his disillusionment with law school and belief that the search for employment is influenced by factors other than competence. The materials and letters from respondent consistently reflect his troubled state of mind and negative attitude toward the institution of the practice of law. Respondent did not have any institutional sponsorship for his project, nor approval from his law school professors for the misuse he made of their professional credentials in the bogus letters of recommendation.

A hearing was held in February 1977. Respondent was served with a subpoena duces tecum, but did not appear at the hearing or give notice of his intent not to appear. He wrote to the Association later that his work hours were such

that he could not attend. The hearing panel concluded respondent violated DRA 1.1(a) relating to acts of dishonesty, DRA 1.1(k) relating to conduct demonstrating unfitness to practice law, and DRA 1.1(i) relating to violations of the Code of Professional Responsibility. The panel further concluded respondent violated (CPR) DR 1–102(A)(4) and (6) of that Code, provisions relating to dishonesty and misrepresentation, and fitness to practice law. It recommended that respondent by suspended from the practice of law for a period of 30 days, and that he be censured for his failure to respond to the subpoena and attend the hearing. The Disciplinary Board of the Bar Association adopted the hearing panel officer's findings, conclusions, and recommendations by order dated June 7, 1977. The Board also assessed costs against respondent in the amount of $1,552.22. Respondent did not object to the Board's censure and is therefore deemed to have accepted it. DRA 5.6(e). Only the Board's recommendation for a 30-day suspension is before this court.

Respondent's use of false documents to represent his own abilities and achievements was an act of blatant dishonesty which calls into question his fitness to practice law. Respondent has submitted no sworn statement in defense of his acts, or brief informing this court of his position. He failed to appear at the first hearing this court held to consider the matter. The Chief Justice therefore issued an order to respondent to show cause why he should not be disbarred. Respondent did appear at the second hearing and related to this court the reason and purpose of his acts. Respondent believes he erred in judgment, but that he is nonetheless morally qualified to continue in the practice of law.

We agree with the Disciplinary Board that respondent has violated the Disciplinary Rules for Attorneys and the Code of Professional Responsibility. He has dishonestly misrepresented his own abilities and achievements, and misused the professional credentials of his law school professors. We are convinced, however, that respondent's acts

reveal not corruption, but only seriously misguided judgment, a point made by the Bar Association in its brief. Testimony at the February hearing characterized respondent as sincere, stable and courteous. This was borne out in respondent's forthright account to this court of his conduct and intentions in carrying out the research project. Furthermore, the evidence does not show respondent made any attempt to reap personal gain from the project. He insists he would not have accepted an offer of an interview or a job on the basis of the false materials, and has submitted a letter he composed to Mr. Aberle apologizing for sending the false documents and explaining his reasons for doing so.

■ Our primary purpose in imposing disciplinary measures on attorneys is to protect the public from misconduct and preserve its confidence in the judicial system. *In re Smith,* 85 Wn.2d 738, 539 P.2d 83 (1975). The measures we impose must be appropriate to accomplish this purpose based on the particular facts of the case. *In re Nelson,* 87 Wn.2d 77, 549 P.2d 21 (1976). Respondent's offense is very serious. For this reason we impose a suspension of 90 days from the date of the filing of our opinion, somewhat longer than the period recommended by the Bar Association. We are satisfied this measure will be sufficient to impress upon respondent the serious deficiencies in his behavior. We do not believe disbarment is necessary because respondent's conduct, however misguided, was not founded on dangerous or corrupt motives.

The Disciplinary Board assessed costs against respondent in the amount of $1,552.22. Respondent has amply demonstrated that he cannot pay these costs at this time. The Bar Association has indicated it would not object to this court authorizing a deferred payment of costs assessed against respondent. Such an order would allow respondent's reinstatement after 90 days but prior to payment in full of the costs. *Cf.* DRA 7.3. We agree that a deferred payment schedule, worked out between respondent and the Association, would be appropriate in this case. Since the Bar Association has not filed a statement of additional expenses,

only those costs originally assessed against respondent in the amount of $1,552.22, are ordered. Respondent shall arrange a schedule of payments with the Bar Association and shall not be required to complete payment of those costs prior to his reinstatement in the practice of law at the end of the period of his suspension.

It is so ordered.

ROSELLINI, UTTER, DOLLIVER, and HICKS, JJ., concur.

BRACHTENBACH, J. (dissenting)—I dissent because I believe that respondent should be disciplined far more severely than does the majority. However, the majority of this court has exercised its discretion in a disciplinary matter and I recognize that disciplinary sanctions lie within the conscience of each Justice, rules and prior decisions not withstanding.

Suffice it to say that I find respondent's actions and attitudes about this matter, particularly after being admitted to the Bar, to be a gross violation of the ethical standards to which I believe attorneys must adhere.

WRIGHT, C.J., and HAMILTON and STAFFORD, JJ., concur with BRACHTENBACH, J.

WRIGHT, C.J. (concurring in the dissent)—I have signed the dissent herein. I do feel, however, it should be said that the law is an honorable profession. Contrary to views held by many persons, the legal profession probably has the highest moral and ethical standards of any trade, calling, vocation or profession known to man. That is necessarily so because of the nature of its work.

The conduct of a member of the bar should ever be above reproach. What this respondent did is a discredit to his chosen profession and evidences a lack of that degree of moral judgment and moral fitness which should always be the mark of a lawyer and a gentleman.

The strength of a collegiate court is in the collective judgment of the majority. I am hopeful the future will prove the result reached in this case was just and proper.

HAMILTON, J. (concurring in the dissent)—I, like Chief Justice Wright, have signed the dissent by Brachtenbach, J. I would but add that the majority, out of a great degree of compassion for respondent's "misguided" conduct, is implicitly endorsing a course of lawyer conduct which the majority characterizes as "blatant dishonesty". To place our tacit stamp of approval on the conduct this record reveals is to unduly expose the public, as well as the courts and the legal profession, to the potential harm that can flow from a legal practitioner who embarks upon his career without the requisite moral judgment and integrity.

In my view respondent, at a minimum, should be indefinitely suspended, the suspension to continue until such time as respondent can credibly demonstrate the moral maturity necessary to fulfill the trust which must be placed in his fitness as an attorney by the public, clients, and the courts.

STAFFORD and BRACHTENBACH, JJ., concur with HAMILTON, J.