(No. 56121.—

*In re* ANTHONY BYRON LAMBERIS, Attorney, Respondent.

*Opinion filed December 17, 1982.*

UNDERWOOD and MORAN, JJ., dissenting.

James J. Grogan, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

William J. Harte, of William J. Harte, Ltd., of Chicago, for respondent.

JUSTICE SIMON delivered the opinion of the court:

In writing a thesis which he submitted to Northwestern University in satisfaction of a requirement for a master's degree in law, the respondent, Anthony Byron Lamberis, plagiarized two published works. In an attorney disciplinary proceeding based on this conduct the Hearing Board found that the respondent had "knowingly plagiarized" two published works and that this plagiarism constituted "conduct involving dishonesty, fraud, deceit, or misrepresentation" violating the Illinois Code of Professional Responsibility DR 1—102(A)(4) (Illinois State Bar Association 1977). The Hearing Board recommended that the respondent be censured. The Review Board adopted the Hearing Board's findings of fact, but recommended in a closely divided vote that the respondent receive a suspension of six months.

The principal facts in this case are essentially undisputed. The respondent was admitted to practice law in Illinois on November 16, 1970, after receiving his law degree earlier in that year. In September 1970 he enrolled in an LL.M. degree program at the Northwestern University School of Law. In addition to course work the Northwestern degree program required that the candidate submit a thesis, although there was no time limit on when the candidate had to complete it. After success-

fully completing the required course work during the 1970-71 academic year, the respondent briefly served as an assistant Attorney General of Illinois and then entered private practice in Palatine.

While practicing law the respondent continued to work on his thesis. In 1977 he submitted a thesis that was rejected by the faculty as unsatisfactory. In June 1978, the respondent submitted a new thesis which he titled, "The Law of Privacy and its Effects on Law Enforcement: Title III Problems." In preparing pages 13 through 59 of his 93-page thesis the respondent incorporated, substantially verbatim and without crediting the source, excerpts from two published works: J. Carr, The Law of Electronic Surveillance (1977) and M. Paulsen, The Problems of Electronic Eavesdropping (1977). Thus, a substantial portion of his thesis, which the respondent misrepresented as his own work, was the work of other authors.

In June 1979, Northwestern notified the respondent that there were possible honor code violations concerning the thesis. The respondent attempted to resign from the degree program, but the university refused to accept this resignation. Instead, the law school initiated student disciplinary proceedings, and on January 22, 1980, the faculty of the Northwestern University School of Law voted to expel him for plagiarism. Thereafter, the law school complained to the Attorney Registration and Disciplinary Commission, a complaint which caused the Administrator to initiate this disciplinary proceeding.

The only factual finding that the respondent disputes is the Hearing Board's conclusion that he "knowingly plagiarized" the two published works. In reaching this finding the Board regarded as unworthy of belief respondent's explanation that his plagiarism was the result of academic laziness and did not reflect an intentional effort to deceive his thesis examiners. The Hearing Board

found:

> "Respondent engaged in conduct which clearly constituted plagiarism. Objectively considered, the facts demonstrate nothing else. Subjectively, it is inconceivable to us that a person who has completed undergraduate school and law school would not know that representing extensively copied material as one's own work constitutes plagiarism. Respondent's deception is compounded by his lack of candor in claiming that his efforts were not an intentional effort to deceive. We cannot accept an assertion that would require that we find such a naivete or a lack of intelligence on his part."

We agree with the Board's conclusions; given respondent's extensive academic background and the extent of the verbatim copying, any other finding would be untenable.

Respondent also argues that this court should not impose discipline on an attorney for plagiarism that occurred in an academic forum which is removed from the practice of law. The Administrator has not cited and we have not found any case in which an attorney was professionally disciplined for such conduct. Respondent argues that there is no modern authority in this State which would support this court in disciplining attorneys for conduct arising outside the practice of law when that conduct is considered deceitful and immoral but not criminal.

This court has often disciplined attorneys for conduct arising outside the practice of law. Most of these cases, however, have involved illegal conduct, fraud on the court, or situations closely analogous to those which an attorney confronts in the practice of law. See, e.g., In re Gold (1979), 77 Ill. 2d 224 (failure to file Federal tax returns); In re Mitan (1979), 75 Ill. 2d 118 (nondisclosure of information on bar application), cert. denied (1979), 444 U.S. 916, 62 L. Ed. 2d 171, 100 S. Ct. 231; In re Cook (1977), 67 Ill. 2d 26 (false testimony before grand jury and United States Senate subcommittee); In re Melin (1951), 410 Ill. 332 (commingling of funds by executor of estate).

Although no violation of law or fraud on the court is al-

leged here, and although the academic forum may appear to be fairly distant from the practice of law, we believe that the respondent's conduct warrants discipline. In imposing discipline in this case we do not intend to imply that attorneys must conform to conventional notions of morality in all questions of conscience and personal life. "We are charged with the responsibility of supervising the professional conduct of attorneys practicing in this State, and we are interested in their private conduct only in so far as such relates to their professional competence or affects the dignity of the legal profession." *In re Serritella* (1955), 5 Ill. 2d 392, 398.

In cases of this type, fairness and justice require that discipline be imposed only "to protect members of the public, to maintain the integrity of the legal profession and to safeguard the administration of justice from reproach." *(In re Nowak* (1976), 62 Ill. 2d 279, 283.) In this case, sanctions are appropriate and required because both the extent of the appropriated material and the purpose for which it was used evidence the respondent's complete disregard for values that are most fundamental in the legal profession.

The extent of the respondent's plagiarism displays an extreme cynicism towards the property rights of others. He incorporated verbatim the work of other authors as a substantial portion of his thesis and obtained no permission for this use. Moreover, this conduct amounted to at least a technical infringement of the publishers' federally protected copyrights. This fraudulent conversion of other people's property is similar to conduct that Illinois and other States have held warrants discipline. *E.g., In re Abbamonto* (1960), 19 Ill. 2d 93, 97 (wrongful conversion of down payment on real estate); *Stratmore v. State Bar* (1975), 14 Cal. 3d 887, 538 P.2d 229, 123 Cal. Rptr. 101 (filing of false expense claims with law firm recruiters); *In re Gunderson* (1980), 75 A.D.2d 706, 427 N.Y.S.2d 307 (attempted theft of a museum piece).

The purpose for which respondent used the appropriated material also displays a lack of honesty which cannot go undisciplined, especially because honesty is so fundamental to the functioning of the legal profession. (*In re March* (1978), 71 Ill. 2d 382, 391 (attorney disciplined for fraud in sale of stock); *cf. In re Lavery* (1978), 90 Wash. 2d 463, 587 P.2d 157 (attorney disciplined for falsifying law school transcripts and letters of recommendation).) "The public as well as *** the courts have an interest in [an attorney's] integrity and are entitled to require that he shun even the appearance of any fraudulent design or purpose." *In re Abbamonto* (1960), 19 Ill. 2d 93, 98.

At the time of respondent's conduct, this court considered the Illinois Code of Professional Responsibility adopted by the Illinois State Bar Association in 1977 as a safe guide for attorneys in their professional conduct. (*Cf. In re Krasner* (1965), 32 Ill. 2d 121, 129.) DR 1—102(A)(4) of the ISBA code reflects the commitment to honesty that each lawyer must make when it states that "[a] lawyer shall not *** engage in conduct involving dishonesty, fraud, deceit, or misrepresentation" (Illinois State Bar Association 1977). This provision is identical to the comparable provision in the Code of Professional Responsibility subsequently adopted by this court (79 Ill. 2d R. 1—102(a)(4)). The respondent violated this provision when he plagiarized the two sources. The essence of plagiarism is deceit. In this case, the deceit is aggravated by the level on which it occurred. Academic forums have a long and well-known tradition of evaluating each individual on his own performance. The respondent attempted to exploit this tradition to his own benefit; the purpose of his deceitful conduct was to obtain a valuable consideration, an advanced law degree, that would have undoubtedly improved his prospects for employment, reputation and advancement in the legal profession.

Having decided that the respondent's conduct warrants

some discipline, we must decide whether to impose disbarment, suspension or censure. The Hearing Board recommended censure; the Review Board recommended suspension for six months; and the Administrator argues here for disbarment. In support of his position, the Administrator cites many cases for the proposition that intentional fraud warrants disbarment. We do not find these cases conclusive in the novel context of this case. "While uniformity in attorney discipline is desirable, every case must be considered on its own merits." *In re Driscoll* (1981), 85 Ill. 2d 312, 317.

The respondent's law partner, Steve Delanty, testified that the respondent has an impeccable reputation in the community and has had a good record in a private practice servicing thousands of clients. Moreover, in the 10 years since he entered private practice, no client has ever complained about his conduct, professional or otherwise.

The respondent's plagiarism displayed only a defect in character; it did not directly cause harm to any person. The respondent's fraudulent appropriation of the two works did not diminish the value of the works to the authors, nor did it expose the authors to any risk of loss. Moreover, in appropriating their property, the respondent did not violate any trust which the authors had reposed in him.

All honest scholars are the real victims in this case. The respondent's plagiarism showed disrespect for their legitimate pursuits. Moreover, the respondent's conduct undermined the honor system that is maintained in all institutions of learning. These harms, however, are rather diffuse, and in any event, Northwestern University has already rectified them by expelling the respondent, an act which will also undoubtedly ensure that the respondent will be hereafter excluded from the academic world.

In view of the respondent's apparently unblemished record in the practice of law and the disciplinary sanctions

which have already been imposed by Northwestern University, we choose censure as the most appropriate discipline for the respondent.

*Respondent censured.*

JUSTICE UNDERWOOD, dissenting:

Although I agree with the majority's conclusion that respondent's conduct warrants discipline, the censure imposed seems to me an inadequate response to the deliberate and deceitful nature of respondent's conduct.

While no two disciplinary cases are completely alike, "predictability and fairness require a degree of consistency in the selection of sanctions for similar types of misconduct." (*In re Saladino* (1978), 71 Ill. 2d 263, 275. See *In re Feldman* (1982), 89 Ill. 2d 7.) Respondent's action constituted a purposeful violation of the bar's fundamental obligation of honesty, and cannot, in my judgment, be equated with the negligent commingling and conversion for which we censured the respondent in *In re McLennon* (1982), 93 Ill. 2d 215. Rather, the character of respondent's misconduct more closely resembles a fraudulent misrepresentation which has customarily received a more severe sanction. See *In re Nowak* (1976), 62 Ill. 2d 279; *In re March* (1978), 71 Ill. 2d 382; *In re Sherre* (1977), 68 Ill. 2d 56.

As noted by the majority, the reasons for which we impose discipline are "to maintain the integrity of the legal profession, to protect the administration of justice from reproach, and to safeguard the public." (*In re LaPinska* (1978), 72 Ill. 2d 461, 473.) I think it clear that respondent's intentional deceitfulness tends to bring the legal profession into disrepute and, although not perpetrated in the context of an attorney-client relationship, indirectly threatens the administration of justice by undermining public confidence in the integrity of officers of the court. *In re March* (1978), 71 Ill. 2d 382, 391; *In re Abbamonto* (1960), 19 Ill. 2d 93, 98.

Because of the calculated nature of respondent's mis-

conduct some suspension seems to me necessary. Since the length of a suspension should bear a close relationship to the harm or risk of harm caused (*In re Saladino* (1978), 71 Ill. 2d 263, 276), and since respondent's misconduct did not directly affect any other person, I would think a three-month suspension appropriate.

JUSTICE MORAN joins in this dissent.