**In re Theodore HADZI–ANTICH, Respondent, A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 85–52.**

District of Columbia Court of Appeals.

Submitted Aug. 6, 1985.

Decided Aug. 9, 1985.*

Before NEWMAN, TERRY and ROGERS, Associate Judges.

**ORDER**

In this disciplinary proceeding, the Board on Professional Responsibility (BPR) found

* The decision in this case was originally issued as an unpublished order. The motion of the Board on Professional Responsibility for publication of the order has been granted by the court.

that respondent, a member of the District of Columbia Bar, violated Disciplinary Rule 1–102(A)(4) by "engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation" and recommended that he be publicly censured. Briefly stated, the evidence showed that respondent submitted a resume to a prospective employer, Southern Methodist University School of Law, which contained false information. He was hired as an Assistant Professor of Law but resigned after being confronted with the falsehoods on his resume. Further details are set forth in the report and recommendation of the BPR, which is appended to this order and incorporated herein by reference.

■■■ Respondent does not challenge the BPR's findings, but contends that the recommended sanction is excessive. We do not agree. This court must give deference to the BPR's decision and adopt its recommendation "unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or otherwise would be unwarranted." D.C. Bar R. XI, § 7(3). In this case we are satisfied that the BPR's recommendation is consistent with other dispositions involving comparable conduct. *E.g., In re Molovinsky*, No. M–31–79 (D.C. August 23, 1979); *In re Christmas*, No. M–21–76 (D.C. June 2, 1976). *See also In re Lamberis*, 93 Ill.2d 222, 66 Ill.Dec. 623, 443 N.E.2d 549 (1982) (respondent, a student enrolled in a graduate program, censured for plagiarizing two published works); *In re Norwood*, 80 A.D.2d 278, 438 N.Y.S.2d 788 (1981) (respondent censured for misrepresenting his academic credentials on his resume and giving false information about his tax returns on a job questionnaire); *cf. In re Lavery*, 90 Wash.2d 463, 587 P.2d 157 (1978) (90-day suspension ordered when respondent misrepresented his achievements on his resume and misused professional credentials of his law school professors). For the reasons stated by the BPR, we specifically reject appellant's argument that the sanction imposed

here should be the same as that imposed in Maryland.

It is therefore ORDERED that respondent be, and he hereby is, publicly censured.

## APPENDIX

### DISTRICT OF COLUMBIA COURT OF APPEALS BOARD ON PROFESSIONAL RESPONSIBILITY

Bar Docket Number: 83–83

IN THE MATTER OF: THEODORE HADZI-ANTICH

REPORT AND RECOMMENDATION

This matter is before the Board on Professional Responsibility upon the report of Hearing Committee Number Eight, which has found Respondent's conduct in violation of the standards governing the practice of law in the District of Columbia. Following hearing on May 24, 1984, at which oral testimony and documentary evidence were presented, Hearing Committee Number Eight concluded that Respondent violated DR 1–102(A)(4) by "engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation." A complaint had been lodged against Respondent by his former employer when he was found to have falsified his resume in applying for a teaching position at Southern Methodist University School of Law in Dallas, Texas. Respondent was offered the position and subsequently became Assistant Professor of Law at Southern Methodist from August 1981, until his resignation in May 1983. On or about May 10, 1983, Dean Jeswald W. Salacuse of the SMU School of Law confronted Respondent with alleged discrepancies in information contained in Respondent's resume. Specifically, Dean Salacuse questioned whether Respondent had graduated first out of 185 students in his University of Oklahoma Law School class, had been Editor-in-Chief of the *Oklahoma Law Review*, or had graduated summa cum laude from the University of Connecticut in 1973, as stated in his resume. Respondent admitted the errors but claimed that a cor-

 rected resume had been prepared and forwarded to SMU sometime in November 1980. Officials at SMU School of Law denied having received the corrected resume. Respondent soon thereafter resigned his appointment.

### DISCUSSION

Respondent's resume was prepared in April 1980, by the Resume Place, a resume printing service on 18th Street, N.W., based on information supplied by Respondent but relayed to the service by his wife. Respondent contends that his original draft was accurate but was embellished at the Resume Place by his wife and one of their editors (Tr. 31). Respondent further states that the completed resume was not used between April and October, when he applied to SMU. Soon thereafter, in November 1980, Respondent claims that by chance he noticed that the resume contained errors, and he then had the Resume Place prepare an amended resume which he claims he forwarded to officials at SMU straightway. Respondent admits he was negligent in reviewing his resume, but maintains that he had no knowledge prior to November 1980, that it contained misrepresentations.

There are three discrepancies at issue:

1. In the initial resume Respondent stated that he had graduated summa cum laude from the University of Connecticut in May 1973. In fact, his diploma citation reads "With High Honors with Distinction in English." This plausibly can be taken to mean graduation magna cum laude with distinction (or departmental honors) in English. It is Respondent's position that distinction in English, which could be interpreted as highest departmental honors, might have been construed by his wife and the printing service to mean highest overall honors, or summa cum laude (Tr. 38).

2. Respondent's April resume listed his law school class rank as first out of 185. According to a letter from David Swank, Associate Dean of the University of Oklahoma College of Law, Respondent's file had disappeared from the college records. However, their reconstruction of his file indicates that he ranked 25th out of 165, with a grade point average of 8.25 on a 12 point scale. The student who graduated first had an average of 10.47. Also, Respondent was not a member of the Order of the Coif, a distinction reserved for the top 10% of his class. Respondent was cited by the Bureau of National Affairs, Inc. and the University of Oklahoma College of Law "in recognition of the most satisfactory scholastic progress in the field of law during the final school year." Respondent avers that this award was given to the student with the highest grade point average during the senior year of law school. (Tr. 48).

3. On the resume Respondent is listed as Editor-in-Chief of the University of Oklahoma Law Review when in fact he was a member of the board of editors.

Respondent denies that he intended to misrepresent his credentials and attributes the errors in his resume to the interpretation given his data by his wife and the Resume Place. Yet in sworn testimony an employee of the Resume Place stated that it has not been their policy to make substantive changes on their own and that the client must proofread and approve in writing the final draft before printing (Tr. 59–60). Moreover, we cannot accept Respondent's position that he paid no attention to the production of his resume from the time he supplied data to his wife, his agent, in April 1980, until November 1980, when he "stumbled" onto the errors or that the resulting misrepresentations were not sanctioned by him. There is no evidence that, even in November, Respondent actually alerted his prospective employer to these discrepancies. Respondent has no copy of

the cover letter which supposedly accompanied the amended resume; nor did he make any effort to orally relate this information to officials at SMU once he arrived to begin his appointment.

We are not persuaded by Respondent's argument that SMU Law School must bear responsibility for the negligence because it failed to properly investigate the information contained in his resume. In the first place Respondent had an ethical and professional obligation to furnish information that he knew to be accurate. The resume is usually the first significant information a prospective employer receives about a candidate; its accuracy is essential. The argument that officials at SMU had a professional obligation to go beyond a reliance on this document and to consider references and other supporting materials does not in any way excuse Respondent's negligence.

### DISCIPLINE

The Board on Professional Responsibility accepts the findings of fact and violations of Disciplinary Rule 1–102(A)(4) as established by Hearing Committee Number Eight, and we agree with the recommendation of public censure as the appropriate sanction.

Respondent argues that if any sanction is warranted it should be limited to an informal admonition which is the equivalent of the private reprimand administered to Respondent in Maryland as a result of Dean Salacuse's complaint in that jurisdiction.

We note, however, that our proceeding did not arise as a reciprocal discipline matter based upon Maryland's action. Even had this proceeding been based upon imposition of reciprocal discipline, in recommending a sanction we are not bound by the sanction imposed in Maryland were the Board to conclude that the misconduct established warranted substantially different discipline in this jurisdiction.

We need not reach that issue in this matter since our recommendation is based upon the comprehensive record established

*de novo* by Hearing Committee Number Eight. (No hearing was conducted by the Maryland disciplinary authorities.) That record amply supports the findings and recommendation of the Hearing Committee.

Respondent made false representations to SMU School of Law, and it is clear that his appointment was based largely on the information contained in his resume. Respondent obviously regarded three of these items as incorrect since they appeared differently in the amended version of his resume. By not making sure that SMU was aware of the inaccuracies in his first resume, it must be determined that Respondent intended to falsify his credentials.

It cannot be argued that injury was minimal. When a fraud of this type is perpetrated there is a direct assault on the ethical code that binds advocates of law. Additionally, competition for academic positions assumes that preference will be given to the most qualified persons, as determined largely by their credentials. When information is false, there is direct injury to other qualified persons whose accomplishments are unfairly subordinated.

For the Board on Professional Responsibility

By: /s/ William H. Alexander
DR. WILLIAM H. ALEXANDER

Date: January 4, 1985

All members of the Board concur in this Report except Mr. Freund, who did not participate, and Ms. Cuningham, who dissents in a separate opinion.

### DISSENTING OPINION

I dissent solely on the issue of sanction.

Respondent admits that an inaccurate resume was submitted to SMU Law School because of his negligence. Respondent has no record of prior discipline.

No case in this jurisdiction has considered the issue of resume falsification. However, faced with the identical facts and identical parties, the Attorney Grievance Commission of Maryland decided to disci-

pline Respondent by issuing a private reprimand. (Maryland BC Docket 84–67–00–5, May 29, 1984)

Respondent's misconduct must be balanced against the purposes of the disciplinary process. The Board's recommendation for public censure, based on the circumstances, is clearly excessive. An informal admonition is, in my opinion, a more appropriate sanction.

/s/ Ann Cuningham
ANN CUNINGHAM

Date: January 4, 1985