**IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS AND CONDUCT, Complainant,**

v.

**Robert M. SHERMAN, Respondent.**

No. 01–1126.

Supreme Court of Iowa.

Dec. 19, 2001.

Norman G. Bastemeyer and Charles L. Harrington, Des Moines, for complainant.

Robert M. Sherman, pro se, Ft. Dodge.

LAVORATO, Chief Justice.

The Iowa Supreme Court Board of Professional Ethics and Conduct filed a complaint with our Grievance Commission against respondent, Robert M. Sherman. The complaint alleged that Sherman had violated several disciplinary rules centering on his alleged neglect of legal matters entrusted to him and his alleged failure to cooperate with the Board's investigation regarding these matters. The Commission recommended a thirty-day suspension of Sherman's license to practice law. In our de novo review, we agree that a suspension is appropriate, but suspend Sherman's license for a minimum of three months.

## I. Background Facts and Proceedings.

On August 7, 1995, Gerald Davis was involved in an automobile accident. State Farm Insurance Company insured Jimmy Collins, the owner of the other vehicle, and Brent Erhardt, who was driving Collins's vehicle at the time. The company also insured Davis.

Sherman had successfully represented Davis's daughter in a personal injury accident. For that reason, Davis asked Sherman to represent him in connection with injuries he had suffered in his 1995 accident. At the time Davis sought out Sherman to represent him, State Farm had already compensated Davis for the property damage to his car. In addition, the company had already paid medical expenses Davis incurred because of his injuries—a cut on the nose, some blackening of the eyes, and a possible head injury. Pain and suffering was the only item of damages for which State Farm had not compensated Davis.

At the time of the accident, Davis was receiving social security benefits for a long-time heart condition. When Davis met with Sherman, he told the lawyer he was concerned that the accident might have worsened his heart condition. Davis's car had been rear-ended in the accident and knocked into a vehicle in front of him. Sherman agreed to represent Davis if the heart condition did worsen because of the accident. Otherwise he would not represent him because the suit was too small to handle.

Several months later, Davis called Sherman and told him—apparently for the first time—that during the accident his chest hit the steering wheel. During a later office visit, Davis told Sherman that he forgot to tell Sherman about his chest hitting the steering wheel but that he did tell the emergency doctor and his heart doctor. Sherman told Davis to continue treatment and see what "develops." Davis's condition deteriorated and he died on May 31, 1997.

Several weeks after Davis's death, his widow contacted Sherman to see what was going on with the case. Sherman explained the terms of his representation, but that did not satisfy Mrs. Davis, who accused Sherman of "not doing a good job of representing her husband." At that point, Sherman contacted Davis's heart

doctor, who told Sherman there was no connection between the heart condition and the accident.

On June 16, Mrs. Davis faxed Sherman a letter, terminating his services and directing him to release her records to another attorney whom she had retained. According to Sherman, Mrs. Davis was in Sherman's office two weeks later pleading with Sherman to take back the case. Also according to Sherman, she admitted to him she had lied about retaining another attorney. Sherman agreed to take the case and opened the estate of Gerald Davis to prosecute the lawsuit against Collins and Erhardt. In the meantime, Mrs. Davis moved to Texas.

Sherman opened the estate on August 6, 1997, and filed the lawsuit on the same day, which was one day before the expiration of the statute of limitations. Although Sherman obtained personal service on both defendants, the district court later ruled that such service was untimely as to Collins and dismissed the case against him. It did so because Sherman had not served Collins until 132 days after filing the petition. The court ruled that service was timely as to Erhardt, although Sherman had not served Erhardt until 119 days after filing the petition.

Sherman's dilatory actions continued. Sherman failed to respond to defense counsel's interrogatories until after a motion to compel. Although Sherman failed to answer all the interrogatories, he did provide the medical documentation that defense counsel felt was most important. At the same time he furnished the medical records, Sherman made a demand for $3000 to settle the case. The demand was predicated on the lack of any medical evidence that the accident worsened the deceased's heart condition and hastened his death.

State Farm agreed to the settlement. On August 7, 1998, pursuant to that settlement, defense counsel sent Sherman a settlement check payable to Sherman and Mrs. Davis jointly for $3000 and a standard release form. In the transmittal letter, defense counsel told Sherman to have Mrs. Davis sign and date the release. As soon as Sherman returned the signed release and a file-stamped copy of a dismissal with prejudice, Sherman was authorized to negotiate the settlement check.

On November 2, defense counsel wrote Sherman, asking for the signed release and dismissal. Sherman did not respond. After several telephone calls from defense counsel and letters requesting these documents, Sherman finally responded on June 2, 1999, with a phone message that he had obtained a court order approving the settlement. The order was actually signed on April 27, 1999.

On June 25, 1999, Sherman called defense counsel and told him that he had misplaced the order but would find it that weekend and would send it together with a dismissal. On July 23, in response to further inquiries from defense counsel, Sherman left a phone message that he would find the order or have a new one signed.

On August 30, 1999, defense counsel filed a counterclaim, asking the court to enter an order for specific performance of the settlement agreement. Counsel's action was prompted by State Farm's receipt of the $3000 check endorsed by Mrs. Davis and Sherman. On August 31, after receiving a copy of the counterclaim, Sherman filed the court order dated April 27, 1999, approving settlement. On the same day, the district court entered an order approving the settlement and dismissing the case with prejudice.

Earlier, on June 2, 1999—almost ten months after he had received it—Sherman signed the $3000 check and sent it to Mrs.

Davis without first obtaining the release. Sherman never did provide defense counsel with the release. Sherman claims he never took a fee for the settlement and spent $400 of his own funds in prosecuting the case.

Mrs. Davis filed a complaint with the Board. She claimed Sherman failed to give her the original will and copies of other probate documents, endorsed checks on her behalf without notice or permission, committed fraud or embezzlement, and was biased against her based on race or sex.

After Mrs. Davis filed the complaint, the Board sent notice of it to Sherman and asked for his response. Sherman signed a receipt for the notice but did not reply. The Board sent a second notice to the same address, which was returned "unclaimed." The Board sent a third notice and that also was not answered.

On February 22, 2001, the Board filed a complaint against Sherman with the Commission. The complaint alleged that Sherman violated several disciplinary rules by (1) failing to file a timely inventory and interlocutory report in the estate; (2) failing to serve Collins in a timely manner in the suit, resulting in a dismissal as to him; (3) failing to serve in a timely manner answers to interrogatories in the suit; (4) failing to obtain in a timely manner an order approving settlement; and (5) endorsing the settlement check and mailing it to Mrs. Davis without providing the release and dismissal to defense counsel.

The rules that the complaint alleged were violated by this conduct include Iowa Code of Professional Responsibility for Lawyers DR 1–102(A)(5) (lawyer shall not engage in conduct prejudicial to the administration of justice), (6) (lawyer shall not engage in conduct reflecting adversely on fitness to practice law) and DR 6–

101(A)(3) (lawyer shall not neglect a client's legal matter).

The complaint also alleged that Sherman violated DR 1–102(A)(5), (6), DR 6–101(A)(3) and DR 7–102(A)(3) (lawyer shall not conceal or knowingly fail to disclose that which the lawyer is required by law to reveal) by failing to promptly file the first signed order approving settlement. In addition, the complaint alleged that Sherman violated DR 9–102(B)(4) (lawyer shall promptly deliver to client property or funds belonging to client) by not promptly complying with the settlement agreement and forwarding the proceeds to Mrs. Davis. Finally, the complaint alleged that Sherman violated DR 1–102(A)(5) and (6) by failing to respond to Board inquiries.

Sherman filed answers to the Board's request for admissions but did not file an answer to the complaint. The matter then proceeded to a hearing before the Commission.

## II. Scope of Review.

Because Sherman did not appeal from the Commission's decision, the matter is before us for our de novo review. Ct. R. 118.10. We give respectful consideration to the findings and recommendations of the Commission, although we are not bound by them. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sherman*, 619 N.W.2d 407, 409 (Iowa 2000). The Board must prove misconduct by a convincing preponderance of the evidence. *Id.*

## III. Ethical Violations.

At the hearing before the Commission, the Board presented the testimony of defense counsel in the civil suit. The witness testified about the delays in discovery and the delay in the settlement of the suit. In addition, the Board presented exhibits substantiating the delays.

Sherman also testified. He described the difficulties he had in dealing with Mrs. Davis. He also explained the personal problems he was experiencing at the time, which put him under a great deal of stress. He advised the Commission that he was winding down his practice. He conceded that some suspension of his license was probably appropriate but that the suspension should be short.

The Commission found that Sherman was delinquent in filing the inventory in the estate, failed to serve Collins in a timely manner, negotiated the settlement check without having first obtained a signed release, and failed to promptly obtain a signed court order approving the settlement. These failures, the Commission found, were in violation of DR 1–102(A)(5) and (6) and DR 6–101(A)(3).

Apparently in mitigation, the Commission found that Mrs. Davis was "extremely difficult to work with" and that "although discovery was not promptly completed," Sherman did provide the "necessary medical reports" to opposing counsel.

The Commission further found that the ethical violations occurred during a period of time when Sherman was having similar problems with his law practice, and a similar complaint was heard. The Commission pointed out that Sherman was disciplined in that matter and for that reason felt that Davis's complaint warranted no additional discipline. The Commission, however, did find that Sherman's failure to respond to the Board's inquiries was not excused and recommended a thirty-day suspension for that violation.

Commission Rule 7 provides that when a respondent fails to file a written answer to the complaint within twenty days from the completed service of notice, "the allegations of the complaint shall be considered admitted and the matter shall proceed to a hearing on the issue of the appropriate sanction." Sherman failed to file a written answer to the complaint. The Board's allegations of unethical conduct in the complaint are therefore deemed admitted under rule 7.

Apart from rule 7, the Board proved by a convincing preponderance of the evidence the ethical violations which the Commission found Sherman had committed. Our remaining task is to determine the appropriate discipline.

## III. Discipline.

 In an attorney disciplinary action, the appropriate sanction turns upon the particular facts and circumstances of each case. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lemanski,* 606 N.W.2d 11, 13 (Iowa 2000). In determining the appropriate sanction, we consider the nature of the violations, the need for deterrence, protection of the public, maintenance of the reputation of the bar as a whole, and the attorney's fitness to continue to practice law. *Id.* at 14. We also consider both mitigating and aggravating circumstances. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Mears,* 569 N.W.2d 132, 134 (Iowa 1997). We may impose a lesser or greater sanction than the discipline the Commission recommended. Ct. R. 118.10.

In *Iowa Supreme Court Board of Professional Ethics & Conduct v. Sprole,* we noted that, in past cases, misconduct involving neglect had warranted "public reprimand in some cases and suspension in other cases." 596 N.W.2d 64, 66 (Iowa 1999) (citing cases).

 Here, a difficult client contributed to Sherman's problems. In addition, during the time of these events, Sherman was under a great deal of stress. He testified that the district court had thrust upon him thirty-five cases after the local

public defender's office had closed. He also testified that the Mayo Clinic diagnosed him with major depression and obsessive-compulsive disorder in January 2001 and that he had been seeing a psychiatrist and a clinical psychologist since February 2001. No doubt Sherman was likely suffering from a debilitating mental condition at the time the ethical violations in the present case occurred. We, however, have clearly stated that such personal problems do not excuse ethical misconduct. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Adams,* 623 N.W.2d 815, 818 (Iowa 2001).

▮ Like the Commission, we recognize that the current ethical violations overlap the ones in Sherman's prior disciplinary case before this court. *See Sherman,* 619 N.W.2d at 408–09. Nevertheless, we think Sherman's prior ethical violations in the very areas of his current violations militate in favor of a suspension, a sanction he readily concedes is warranted. In addition, we note that in February 1991, Sherman was admonished for his neglect of several appellate matters and was barred from handling appellate cases in Iowa for two years. And the infractions did not end there. In October 1991, we issued an order of public reprimand for Sherman's failure to respond to repeated requests from the Board for information about a complaint. The order also admonished Sherman for his failure to file a bankruptcy petition in a timely manner for a client. An attorney's prior disciplinary history is an aggravating factor we consider in imposing sanctions for ethical violations. *Sherman,* 619 N.W.2d at 410.

What we said in *Iowa Supreme Court Board of Professional Ethics & Conduct v. Scieszinski* has particular application to Sherman:

> We like to think our certificate of admission to the bar is an indication to

citizens that the holder can and will render competent legal services. If this cannot or will not be done for any reason—even for a tragic reason—the holder must start considering another line of work.

599 N.W.2d 472, 474 (Iowa 1999).

Like some of the respondent lawyers that have come before us, Sherman "is no neophyte procrastinator." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sullins,* 613 N.W.2d 656, 656 (Iowa 2000). As the record shows, Sherman's prior disciplinary history includes client neglect and failure to respond to Board inquiries.

As mentioned, we concur with the Commission's recommendation that Sherman's ethical violations in this case warrant suspension of his license to practice law. However, we think the suspension should be longer than thirty days as the Commission recommended. We therefore suspend Sherman's license to practice law indefinitely, with no possibility of reinstatement for a period of three months. This suspension shall apply to all facets of the practice of law. *See* Ct. R. 118.12 Costs are assessed to Sherman in accordance with Court Rule 118.22.

Upon any application for reinstatement, Sherman must furnish proof that he has not practiced law during the period of suspension and that he has in all other ways complied with Court Rule 118.18. In addition, he must provide this court with medical proof that he is mentally fit to resume the practice of law.

**LICENSE SUSPENDED.**