**IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS AND CONDUCT, Complainant,**

v.

**William J. LANE, Respondent.**

**No. 01–1929.**

Supreme Court of Iowa.

April 3, 2002.

Norman G. Bastemeyer and David J. Grace, Des Moines, for complainant.

Mark McCormick of Belin Lamson McCormick Zumbach Flynn, P.C., Des Moines, for respondent.

STREIT, Justice.

An Iowa attorney passed someone else's writing as his own and claimed he spent almost two weeks writing that which he used. The Iowa Supreme Court Board of Professional Ethics and Conduct filed a complaint with our Grievance Commission against respondent, William J. Lane, alleging he violated several ethical rules and recommended we suspend Lane's license to practice law for three months. Our review is required by Court Rule 118.10. We agree with the Commission's findings of misconduct but suspend Lane's license for six months.

## I. Background Facts and Proceedings

After the conclusion of a trial in federal court in which Daniel Sicard claimed a violation of the Americans with Disabilities

Act, attorney Lane submitted a post-trial brief to the court. The legal portion of the brief was in great part plagiarized from a treatise written by Barbara Lindemann and Paul Grossman. *See* Lindemann & Grossman, *Employment Discrimination Law* (3d ed.1996). Lane later applied to the court for attorney fees. Among other charges, Lane requested compensation for eighty hours of work spent to prepare the questioned brief. Charging $200 per hour, Lane asked for $16,000 to write the brief that was largely copied from an uncredited source. In total, Lane requested $104,127 in attorney fees plus $13,363.29 in costs for his representation of Sicard.

On May 5, 1998, there was a hearing on Lane's attorney fee application. The United States magistrate judge stated it did not appear to him that Lane wrote the legal portions of the brief. Lane responded, "I borrowed liberally from other sources. Yes, your Honor." The court noted,

> [b]ecause of the consistency of style and the sequence of footnotes, the court assumes that [the brief] is from a particular source. If the source is a published treatise, it can simply be identified by name, author, and publisher.

To address this suspicion, the judge ordered Lane to explain or identify the sources cited in his brief within ten days. At the end of the ten days, Lane did nothing to comply with the court's order. On June 4, 1998, a member of the judge's staff asked Lane if he intended to respond to the order. Only days later, a fire at Lane's home destroyed many of his files and records in the Sicard matter. In July 1998, Lane closed his office, but continued to practice out of his home.

Four months passed and Lane still did not respond to the judge's order. On September 30, 1998, the judge entered an order awarding Lane $20,000 in fees in the Sicard case. The judge stated "there [were] many serious problems with plaintiff's fees and cost claim." The court was particularly concerned because Lane did not support his contention he was entitled to receive compensation at the rate of $200 per hour for his services. Lane also requested $9000 as compensation for the time he spent preparing his bill. The judge stated Lane requested $16,000 for the lifted brief but failed to comply with the court's order to "disclose the sources from which counsel 'borrowed liberally.'" Lane also requested compensation for fifty-nine hours of legal research preceding the trial. The court concluded

> it is not reasonable to bill 59 hours of legal research in the two weeks prior to trial.... If counsel spent this amount for time performing research, it is further evidence that he does not possess the skill and experience of those who charge $200 per hour.

The court further explained its reduction of the attorney fees awarded by citing to Lane's charges of $5.00 per telephone call, $1.00 per page of facsimile transmissions, $191 for long distance transmission, and $.50 per photocopy. Finally, the court stated Lane did not cite authority for the ability to charge for estimated pretrial travel expenses. Lane did not appeal the $20,000 award of attorney fees.

On October 30, 1998, Lane filed a compliance with the judge's order to document his sources but the judge was not made aware of the compliance until March 1999. When the judge read Lane's compliance he did not notice any reference to the primary source of the legal portion of Lane's brief. Lane's compliance constituted four pages of single-spaced lists of authorities. Among them was the Grossman treatise. However, no particular attention was drawn to this source. Consequently, the judge undertook his own investigation and

discovered Lane took the legal portion of his brief verbatim from the Grossman treatise.

This complaint also involves Lane's representation in two separate and unrelated bankruptcy cases. The Ethics Board charged Lane with, among other violations, neglect of clients' legal matters, withdrawal from employment without taking reasonable steps to avoid prejudice to his clients and without promptly refunding unearned fees, and failure to seek the lawful objectives of his clients. The Commission found, and we agree, the Ethics Board failed to satisfy its burden to prove Lane violated any ethical rules in representing his clients in the bankruptcy matters. Therefore, we will only address the charges relevant to the Sicard case.

## II. Scope of Review

■■■ This matter is before us on de novo review. Iowa Ct. R. 35.11(3). We give respectful consideration to the findings and recommendations of the Commission, but are not bound by them. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sherman*, 637 N.W.2d 183, 186 (Iowa 2001) (citations omitted). Misconduct must be proven by a convincing preponderance of the evidence. *Id.*

## III. Complaint

The Ethics Board alleges violations of DR 1–102(A)(1), (3), (4), (5), and (6). This rule provides in part, a lawyer shall not

· Violate a disciplinary rule;

· Engage in illegal conduct involving moral turpitude;

· Engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

· Engage in conduct that is prejudicial to the administration of justice; and

· Engage in any other conduct that adversely reflects on the fitness to practice law.

The Ethics Board also charges Lane with a violation of DR 2–106(A) which states, "[a] lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee." The Commission found Lane violated DR 1–102(A)(1), (3), (4), (5), and (6) and DR 2–106(A) by his handling of the Sicard case.

## IV. Ethical Violations

■■■ Lane plagiarized from a treatise and submitted his plagiarized work to the court as his own. This plagiarism constituted, among other things, a misrepresentation to the court. An attorney may not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation. DR 1–102(A)(4). This issue is akin to the matter of ghost-writing attorneys who "author pleadings and necessarily guide the course of the litigation with unseen hand." *Johnson v. Bd. of County Comm'rs*, 868 F.Supp. 1226, 1231 (D.Colo.1994), *aff'd in part and disapproved in part*, 85 F.3d 489 (10th Cir.), *cert. denied sub nom. Greer v. Kane*, 519 U.S. 1042, 117 S.Ct. 611, 136 L.Ed.2d 536 (1996). In this situation, an attorney authors court documents for a pro se litigant who, in turn, submits the court document as his or her own writing. This practice is widely condemned as unethical and a "deliberate evasion of the responsibilities imposed on attorneys." *Wesley v. Don Stein Buick, Inc.*, 987 F.Supp. 884, 886 (D.Kan.1997); *see, e.g.*, Iowa State Bar Ass'n Comm. on Prof'l Ethics & Conduct, Formal Op. 96–31 (June 5, 1997); Iowa State Bar Ass'n Comm. on Prof'l Ethics & Conduct, Formal Op. 94–35 (May 23, 1995); *Duran v. Carris*, 238 F.3d 1268, 1273 (10th Cir.2001); *In re Ellingson*, 230 B.R. 426, 435 (Bankr.D.Mont. 1999); *Ricotta v. State*, 4 F.Supp.2d 961, 987 (S.D.Cal.1998). *See generally Trigon*

*Ins. Co. v. United States,* 204 F.R.D. 277, 292 (E.D.Va.2001). Just as ghost writing constitutes a misrepresentation on the court, so does plagiarism of the type we have before us.

■■■■ Plagiarism itself is unethical. "Plagiarism, the adoption of the work of others as one's own, does involve an element of deceit, which reflects on an individual's honesty." *In re Zbiegien,* 433 N.W.2d 871, 875 (Minn.1988). Use of "appropriated material ... cannot go undisciplined, especially because honesty is so fundamental to the functioning of the legal profession...." *In re Lamberis,* 93 Ill.2d 222, 228, 66 Ill.Dec. 623, 443 N.E.2d 549, 552 (1982). Undoubtedly, Lane's plagiarism reflects poorly on both his professional ethics and judgment.

It was not difficult to find similarity between Lane's post-trial brief and the Grossman treatise. The legal argument of Lane's post-trial brief consisted of eighteen pages of plagiarized material, including both text and footnotes, from the treatise. In copying this material, Lane cherry-picked the relevant portions and renumbered the footnotes to reflect the altered text. Examination of Lane's brief does not reveal any independent labor or thought in the legal argument. *See Alexander v. Irving Trust Co.,* 132 F.Supp. 364, 367 (S.D.N.Y.1955).

On the first occasion plagiarism became an issue, Lane appeared to be forthcoming with the court and admitted "[he] borrowed liberally from other sources." It also appears Lane attempted to identify the source of his writing before the court but was unable to recall the exact title of the treatise. Lane later had the chance to identify his source to the court, but when he responded to the court's order, he failed to specifically draw the court's attention to the Grossman treatise. Instead, Lane buried the title within a list of over 200 other sources. Though a technical compliance with the court's order, Lane's continued lack of candor indicates he hoped, by concealing the treatise among 200 other titles, the judge would not recognize the extent of Lane's plagiarism.

We do recognize Lane's personal circumstances shortly after the time of the court's order were not ideal. Lane's home was nearly destroyed by the fire forcing him and his family to live in a motel for two months. However, this does not excuse his failure to comply with the court's order in a timely fashion. We will not excuse the seriousness of passing off another's work as one's own. We find the record shows Lane knowingly plagiarized and intended to deceive the court.

Equally troubling is Lane's application for attorney fees. Lane copied the entire portion of his legal argument out of a book and then claimed it took him eighty hours to write the brief containing the copied material. He requested attorney fees for this work at the rate of $200 per hour. Other than Lane's assertions that perhaps he works less efficiently than other lawyers, there is little in the record to indicate Lane actually spent this amount of time writing the brief. Because he plagiarized the entire legal argument, the chances are remote that it took Lane eighty hours to write the argument. Rather, the facts show Lane stole all eighteen pages of his legal argument from a single source. Then to justify his request for attorney fees for the eighty hours it took to "write" the brief, Lane submitted a list of over 200 legal sources to the court. In doing so, Lane attempted to have the court believe he researched and relied on each of these sources in writing the brief. These circumstances only support the conclusion Lane endeavored to deceive the court.

The Ethics Board argues Lane's plagiarism was part of a larger scheme to defraud the court by means of inflated time and expense billings. When Lane requested compensation for time he did not spend working on the case, he violated the professional rule forbidding a lawyer from entering into an agreement for, charging, or collecting an illegal or clearly excessive fee. *See* DR 2–106(A); *see, e.g., Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Hoffman*, 572 N.W.2d 904, 909–10 (Iowa 1997) (attorney's charging excessive fee warranted six month suspension where attorney attempted to mislead grievance commission and supreme court with untenable excuses for seeking such an excessive fee). Even after the plagiarism issue arose, Lane continued to assert he was entitled to receive $200 for the eighty hours it took him to copy the material in his brief. He did not at any time admit that it did not take, nor could it have taken him that long to simply copy his legal argument out of a treatise. Charging such a clearly excessive bill brings Lane's integrity into question and the entire legal profession into disrepute.

It is important to note that Lane's request for attorney fees in this case is not similar to cases where the attorney is simply not awarded the fee requested. Lane relies on one particular case in which the district court reduced the attorney's fee application of over $171,000 to $95,000. *See Lynch v. City of Des Moines*, 464 N.W.2d 236, 238 (Iowa 1990). The dispute in *Lynch* involved the attorney's expenditure of time, effort, and money in representing her client. *Id.* at 240. There, the trial court properly considered several factors in reducing the award of attorney fees. *Id.* at 239. These factors included: the time necessarily spent; the difficulty of handling and importance of the issues; the responsibility assumed and results obtained; the standing and experience of the attorney in the profession; and the customary charges for similar service. *Id.* at 238 (citing *Landals v. George A. Rolfes Co.*, 454 N.W.2d 891, 897 (Iowa 1990)). In *Lynch*, there was no suggestion of impropriety or intent to deceive the court on the part of the attorney who submitted the fee application. Moreover, the record contained no evidence to contradict the evidence supporting the fee application. *Id.* at 239.

In many cases a fee application may not necessarily be a precise measure of the time an attorney spent on a particular case. Ethics concerns are not unavoidably raised where the court reduces the attorney fee award merely reflecting considerations that do not bring into question the attorney's honesty or integrity in submitting the fee application. On the other hand, although ethics is not a matter of degree of misstatement—any knowing misstatement to the court being unethical—the nature and depth of Lane's misrepresentation speaks of knowing deception.

The record before us amply supports the conclusion Lane's conduct rises to the level of intent to deceive. Action based in the hopes of deceiving the court are not the same as those arising from simple negligence or even recklessness. A lawyer who knowingly submits a fee application to the court and thereby attempts to misrepresent the amount of time he or she spent working on a case has committed serious ethical violations. Accordingly, we will not treat all of the cases the same. When the fee application involves culpable conduct, the seriousness of the offense will be considered in fashioning the appropriate sanction. We conclude the record supports the Commission's findings that Lane charged a clearly excessive fee in the Sicard case.

## V. Discipline

In determining the proper sanction, we consider the particular facts and

circumstances of each case. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lemanski,* 606 N.W.2d 11, 13 (Iowa 2000). Among the factors we give weight to are the need for deterrence, protection of the public, maintenance of the reputation of the Bar as a whole, and the violator's fitness to continue to practice law. *Id.* at 14. We also consider any aggravating or mitigating circumstances. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Ruth,* 636 N.W.2d 86, 89 (Iowa 2001).

One such aggravating circumstance is a lawyer's prior disciplinary history. *Lemanski,* 606 N.W.2d at 14. Lane has once before faced attorney disciplinary proceedings. In 1997, the Commission sanctioned Lane for failing to respond to an inquiry. He was publicly reprimanded for conduct prejudicial to the administration of justice contrary to DR 1–102(A)(5) and conduct adversely reflecting on his fitness to practice law contrary to DR 1–102(A)(6).

A mitigating factor to consider is Lane's recognition of some wrongdoing. Lane filed "Respondent's Statement" with this court. Although not evidence, we will treat this statement as a supplemental brief. Lane stated,

> I can accept that my behavior was the result of bad judgment, ignorance, even stupidity or carelessness, or sloppiness, or any number of things, such as laziness, negligence, arrogance, indolence, pettiness, or just plain old incompetence....

Lane asserted he did not intend to deceive the court and cited his reputation for honesty. In support of this contention, several character witnesses testified on Lane's behalf at the hearing before the Commission. Despite Lane's statements to the court, he still does not appear to comprehend the wrongfulness of his actions. In requesting excessive and unreasonable attorney fees for a brief he did not write, Lane was not negligent, or even reckless. Rather, more seriously, he intended to deceive. Lane's purported acknowledgment of misconduct fails to recognize the full extent of his wrongdoing.

Mitigating factors alone do not overcome our responsibility to the public and to the legal profession. Though Lane offered evidence of difficult personal circumstances, this does not excuse his unethical conduct. Taking all of the above factors into consideration, we conclude in cases of this type, fairness and justice require discipline be imposed to deter future misconduct, protect the public, and maintain the reputation of the Bar as a whole. *See Lemanski,* 606 N.W.2d at 14. Lane's excessive billing for writing a largely plagiarized brief cannot go undisciplined. Honesty is fundamental to the functioning of the legal profession, and Lane's conduct in this case has compromised that honesty. Moreover, Lane has jeopardized the integrity of the Bar and the public's trust in the legal profession. We conclude a six-month license suspension is warranted. We therefore suspend Lane's license to practice law in the State of Iowa, with no possibility of reinstatement for a period of six months from the date of the filing of this opinion. Upon application for reinstatement, Lane shall have the burden to prove he has not practiced law during the period of suspension and that he meets the requirements of Iowa Court Rule 35.13. Any hearing on application for reinstatement shall be at least sixty days after the filing of such application. *See* Iowa Ct. R. 35.13(1)(a).

The costs of this action are assessed against the respondent in accordance with Iowa Court Rule 35.25.

**LICENSE SUSPENDED.**