**IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS AND CONDUCT, Complainant,**

v.

**Gene A. WICKEY, Respondent.**

No. 03–1935.

Supreme Court of Iowa.

April 7, 2004.

Norman G. Bastemeyer and David J. Grace, Des Moines, for complainant.

Gene A. Wickey, Sioux City, pro se.

LAVORATO, Chief Justice.

This disciplinary proceeding arises out of Gene A. Wickey's handling of one criminal and two civil matters. The Iowa Supreme Court Board of Professional Ethics and Conduct alleged Wickey committed numerous ethical violations in those matters. The Grievance Commission recommended that we suspend Wickey's license to practice law with no possibility of reinstatement for three months. Upon our consideration of the matter, we find that Wickey violated a number of our disciplinary rules, warranting a suspension with no possibility of reinstatement for a period of six months from the filing of this opinion.

Wickey has not appealed under Iowa Court Rule 35.11 from the Commission's recommendation. Nevertheless, we review the record de novo. Iowa Ct. R. 35.10(1). "We give respectful consideration to the Commission's recommendations, but we ultimately decide what discipline is appropriate under the unique facts of each case." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Reese*, 657 N.W.2d 457, 461 (Iowa 2003). "The Board must prove its allegations of lawyer misconduct by a convincing preponderance of the evidence." *Id.*

In our de novo review, we may impose a lesser or greater sanction than the discipline the Commission recommended. Iowa Ct. R. 35.10(2).

## I. Background Facts.

Wickey was admitted to practice law in Iowa in January 1978. Criminal law represents the largest part of his practice. As mentioned, these proceedings arose out of the handling of three matters.

**A. Hernandez criminal case.** Wickey represented Dionicio Hernandez, who had been charged with homicide by motor vehicle, a class B felony. In a trial information

filed January 4, 1999, the State alleged that Hernandez caused the death of another person by operating a motor vehicle while under the influence of alcohol and/or while having a blood alcohol concentration of .10 or more.

Wickey requested a retainer of $10,000. Although Wickey testified at the disciplinary hearing that he did not receive a retainer, letters from Wickey to Hernandez, dated January 26, 1999 and February 8, 1999, requested payment of the *rest* or *balance* of the retainer fee as soon as possible.

Wickey further testified that he received his first retainer payment in the amount of $6,500 on or about February 9, 1999 and believed he deposited the money in his trust account. Wickey's supplemental answers to interrogatories state he has "no recollection as to what deposit was made" and he did not recall the date of the deposit. However, Wickey's trust account records for January and February 1999 show no deposit in the amount of $6,500.

Wickey also testified that his standard office practice is to maintain a trust account ledger card on every client; however, he was unable to find one for Hernandez. Wickey claimed that in any event he had already earned the $6,500 fee when he finally received that amount from Hernandez.

While the criminal proceedings were pending, Wickey moved for a reduction of bail. On April 26, 1999, the district court reduced the bail by $5,000. In its order reducing the bail, the court made it clear that the $5,000 was "to be used solely for depositions and experts." Wickey agreed and said he understood that he would have to wait for payment of his fees.

The same day as the court's order, Wickey wrote Hernandez stating that "it is my understanding that the Court will re-

lease the sum of $5,000 to be used for discovery expenses...." On April 28, 1999, two days after the court's order, Wickey wrote Hernandez another letter and stated that he was "giving some consideration to possibly trying to locate an expert who can testify as to medical procedures, the drawing of blood...."

Before the Board filed this complaint, Wickey advised the Board that the $5,000 was applied to Hernandez's legal account with Hernandez's approval and consent. In his supplemental answers to interrogatories, Wickey stated:

> The Respondent recalls that by the time those funds [the $5,000] were received, additional fees were owed to the Respondent by the client and that a joint decision was made not to retain any experts. The Respondent does not recall whether or not the check was put into his trust account; however, it was the Respondent's policy to deposit all unearned fees into the trust account.

At the disciplinary hearing, Wickey testified that he received a $5,000 check from the clerk of court and that he believed he deposited it into his trust account.

Ray Cota, a former police officer and court interpreter, testified on Wickey's behalf at the disciplinary hearing. Wickey had retained Cota as an investigator for the Hernandez case, and Cota was involved in the early stages of the investigation. Cota was present during meetings with Hernandez and visited the accident scene to determine the cause of the accident. Although Cota did not consider himself an expert on accident reconstruction, he concluded the accident was Hernandez's fault. Cota did not testify at Hernandez's trial.

Wickey hired no experts and took no depositions.

Following his conviction, Hernandez appealed, claiming among other things, that he received ineffective assistance of counsel when Wickey did not hire or use an expert. We transferred the case to the court of appeals, which preserved the issue for postconviction relief proceedings. *State v. Hernandez*, No. 99–1338, 2000 WL 1433613 (Iowa Ct.App. Sept.27, 2000).

In his postconviction relief action, Hernandez sought relief based on Wickey's failure to use the $5,000 bail reduction money toward its ordered purposes of retaining an expert or conducting depositions. The district court sustained the State's motion for summary judgment. The court concluded Hernandez was not prejudiced because a defense expert would not have changed the outcome of the trial.

At two different times—on November 17, 1999 and January 3, 2000—Hernandez sent Wickey written requests for detailed billing statements. Both letters included the following subject-line: "Repeated inquiry for an itemized bill." On January 20, 2000, Wickey responded that he was in the process of putting together such a statement. However, Wickey never sent the statement.

**B. Johnson bankruptcy.** Wickey received a $500 retainer from Mr. and Mrs. Larry Johnson to represent them in a bankruptcy case. On November 16, 2000, we suspended Wickey's license to practice law for his failure to pay his Iowa income tax and file in a timely manner Iowa income tax returns for four years. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Wickey*, 619 N.W.2d 319, 320–21 (Iowa 2000). Wickey had not filed the Johnsons' bankruptcy by the time of his suspension. Wickey testified that he prepared the bankruptcy schedules and Mr. Johnson picked up the schedules to get his wife's signature but never returned them. Wickey further testified he did not file the

bankruptcy because the Johnsons did not pay the bankruptcy filing fee and did not return the schedules.

Wickey also testified that he maintained a trust account ledger for the Johnsons but could not find it. Wickey had no records or deposit slip showing that the $500 retainer was deposited in the trust account. Moreover, Wickey had neither a client file for the Johnsons nor time records for work he allegedly performed for them. He testified that he never provided the Johnsons with an accounting.

The Board introduced copies of notifications that Wickey sent clients about his suspension in 2000. There was no notice addressed to the Johnsons. Although Wickey submitted a notice-to-client form that he claims he sent to the Johnsons, the notice does not have a client name, whereas the other notices did.

**C. Madison property claims.** In March 1999 Jolene Madison sought Wickey's assistance concerning her claims against the City of Sioux City and a jeweler in Nebraska.

Wickey wrote preliminary letters to the city and the jeweler on behalf of Madison. In the letter to the Nebraska jeweler, Wickey stated he would prepare and file a lawsuit if the problem was not resolved. Wickey has never been licensed to practice in Nebraska.

Wickey sent copies of the two letters to Madison with a letter outlining his proposed representation of her. Wickey stated he was not interested in a contingency fee arrangement, quoted his rate as $125 per hour, and requested an advance of $625 ($500 as retainer and $125 for filing and process fees). Madison retained Wickey and paid him the requested $625.

In response to the Board's request for documents, Wickey stated he did not have a trust account ledger for Madison. Notwithstanding this response, Wickey testified at the disciplinary hearing that he had prepared a trust account ledger for Madison but was unable to locate it.

Madison testified she never received from Wickey an accounting, a bill, or a refund of any part of the advance she paid him. Wickey admitted he never sent Madison a bill although he prepared a billing statement in response to the Board's request for information prior to filing its formal complaint.

Madison also testified that Wickey never informed her of his suspension. Wickey claims he sent Madison a notice but produced no notice that included Madison's name.

Wickey had resolved neither of Madison's claims before his suspension in November 2000. On August 29, 2001, Madison wrote Wickey inquiring about the status of her cases. By this time, Madison had consulted another attorney who wanted a copy of the file. Wickey did not respond to the request in writing but believed he spoke with Madison by phone.

**II. Proceedings.**

On June 30, 2003, the Board filed a complaint against Wickey, which was later amended. The amended complaint alleged that Wickey committed various ethical violations in connection with the matters previously mentioned concerning Hernandez, the Johnsons, and Madison.

As to Hernandez, the Board alleged that Wickey violated DR 1–102(A)(1) (lawyer shall not violate a disciplinary rule), (4) (lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation), (5) (lawyer shall not engage in conduct that is prejudicial to the administration of justice), and (6) (lawyer shall not engage in any other conduct that adversely reflects on the fitness to practice law); DR

2–106(A) (lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee); DR 7–106(A) (lawyer shall not disregard ruling of a tribunal made in the course of a proceeding); DR 9–102(A) (lawyer shall deposit advances in trust account), (B)(3) (lawyer shall maintain complete records of all funds of client coming into possession of lawyer and shall render appropriate accounts to the client regarding them); DR 9–103(A) (lawyer shall maintain on a current basis books and records sufficient to demonstrate compliance with DR 9–102).

As to the Johnsons, the Board alleged that Wickey violated DR 1–102(A)(1), (5), and (6); DR 9–103(A); and Iowa Court Rule 35.21 (notification of clients of suspension).

As to Madison, the Board alleged that Wickey violated DR 1–102(A)(1), (5), and (6); DR 6–101(A)(3) (lawyer shall not neglect a client's legal matter); DR 9–102(A), (B)(3); DR 9–103(A); and Iowa Court Rule 35.21.

### III. Ethical Violations.

■ Following the disciplinary hearing, the Commission found that Wickey had not deposited the $6,500 he received from Hernandez in his trust account, but by the time Wickey received the retainer, he had earned the full amount. We agree and adopt the finding that Wickey did not deposit the $6,500 in his trust account. However, we disagree with the Commission's finding that Wickey had earned the fee by the time he received the $6,500. Wickey's own letters to the client in which he requested the *rest* or *balance* of the retainer fee convince us that he indeed had received a retainer that he had not earned and which he therefore should have deposited in his trust account.

We also agree with and adopt the Commission's finding that Wickey did not de-posit the $5,000 bail reduction money in his trust account and that, contrary to the court's order, used the money to pay his fees rather than hire experts and take depositions as the order required.

Although the Commission made no finding regarding the allegation that Wickey failed to maintain records sufficient to show that he deposited the $6,500 and the $5,000 in his trust account, we find the Board established that violation by a convincing preponderance of the evidence.

Finally, we adopt the Commission's finding that Wickey failed to render Hernandez an accounting.

We therefore are convinced the Board established all of its allegations of unethical conduct, save one, against Wickey concerning Hernandez. The one exception is the allegation that Wickey charged an excessive fee. The Board produced no evidence to establish that allegation.

■ As to the Johnsons, we agree with and adopt the Commission's findings that Wickey failed to send them notice of his suspension. We also find Wickey failed to maintain books and records sufficient to demonstrate compliance with DR 9–102; consequently he violated DR 9–103(A). He also violated DR 1–102(A)(1), (5), and (6). Although the Commission concluded Wickey violated DR 9–102(A) (lawyer shall deposit advances in trust account) and (B)(3) (lawyer shall maintain complete records of all funds of client coming into possession of lawyer and shall render appropriate accounts to the client regarding them) with respect to the Johnsons, the Board's complaint did not allege Wickey violated those provisions in his representation of the Johnsons. Accordingly, Wickey cannot be found to have violated them in this instance.

■ As to Madison, we agree with and adopt the Commission's findings that Wickey never sent Madison a notice of his suspension, never deposited the $625 advance in his trust account, and never maintained records sufficient to show that he deposited the retainer in his trust account. The Commission made no finding regarding the Board's allegation that Wickey failed to render Madison an accounting. We find the Board established that violation as well. The Commission made a finding that Wickey did not neglect Madison's claims, a finding with which we disagree. Contrary to the Commission's finding, we think the Board established the neglect allegation. For these reasons, we conclude the Board established all of its allegations of unethical conduct against Wickey concerning Madison.

## IV. Discipline.

■ What discipline is appropriate in an attorney disciplinary proceeding depends on the particular facts and circumstances of each case. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sherman*, 637 N.W.2d 183, 187 (Iowa 2001). What we have here is a smorgasbord of ethical violations—violation of a court order, failures to maintain adequate trust account records as well as failures to deposit retainers in a trust account, failures to account to clients, failures to give clients notice of suspension, and neglect of a client matter. Wickey has demonstrated a cavalier attitude toward our ethical rules, especially those concerning trust accounts. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Gilliam*, 560 N.W.2d 1, 4 (Iowa 1997) (expressing our concern about trust account violations). We are also convinced Wickey was less than truthful with the Commission.

A review of our previous cases involving similar violations demonstrates that the three-month suspension the Commission recommended is not sufficient to deter Wickey from future violations. *See Sherman*, 637 N.W.2d at 187 (holding that deterrence is one of the purposes of attorney disciplinary proceedings). For example, we extended a suspension by three months where the sole violation was failure to notify clients of a suspension. *See Comm. on Prof'l Ethics & Conduct v. Rauch*, 508 N.W.2d 628, 628–29 (Iowa 1993). We ordered a six-month suspension for an attorney who did not properly deposit client funds in a trust account, did not maintain complete records of client funds and render proper accountings, did not keep records to show compliance with the trust account rules, and engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Mattson*, 558 N.W.2d 193, 194–95 (Iowa 1997).

Once more, this is not Wickey's first brush with the disciplinary process. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Pracht*, 627 N.W.2d 567, 573 (Iowa 2001) (holding that prior discipline is an aggravating factor). In 1997 Wickey was publicly reprimanded for failing to provide a client with an appropriate accounting—similar to one of the violations in this case. In addition, in 2000, we suspended Wickey's license to practice law for six months for failing to pay Iowa income tax and file Iowa income taxes in a timely manner for four years. *Wickey*, 619 N.W.2d at 320–21.

Given the number and nature of the present violations as well as Wickey's prior discipline, we think Wickey's conduct here warrants a suspension for a minimum period of six months. We therefore suspend Wickey's license to practice law with no possibility of reinstatement for a period of six months from the filing of this opinion. The suspension applies to all facets of the

practice of law. Iowa Ct. R. 35.12(3). Upon application for reinstatement, Wickey shall have the burden to prove that he has not practiced law during the period of his suspension and that he meets the requirements of Iowa Court Rule 35.13. In addition, as a condition of reinstatement, Wickey must show that he has obtained the assistance of a bookkeeper or accountant to maintain complete and accurate records for his client trust account. *See Mattson*, 558 N.W.2d at 195.

Costs are taxed to Wickey pursuant to Iowa Court Rule 35.25, and payment of such costs shall also be a condition of reinstatement.

**LICENSE SUSPENDED.**